Nov. Term,
1826.

The GOVER-
NOR
v.
SHELBY.

The GOVERNOR, for the use of NEWMAN, Administrator, *v.* SHEL-
BY, Administratrix.

In a suit against the administratrix of *A.* on a bond in which he was surety for *B.* as sheriff, a judgment previously obtained against *B.* on the same bond is inadmissible as evidence for the plaintiff.

If the administratrix, being sued on the bond, had given notice of the pendency of the suit to *B.* and there had been judgment against her, that judgment would have been conclusive against *B.* in a suit against him by the administratrix.

If a devastavit be established against an administrator, his sureties cannot afterwards controvert the devastavit.

The Court cannot give an unqualified charge to the jury, that the evidence is insufficient to support the action, unless in cases where it would be bound to set aside the verdict if for the plaintiff.

*Friday,
November 10,*

ERROR to the *Clark* Circuit Court.

HOLMAN, J.—Debt on a sheriff's bond, brought by the governor for the use of *Newman,* administrator of *Hancock,* deceased, against *M. Shelby,* administratrix of *E. Shelby,* deceased, one of the sureties of *Weathers,* late sheriff of *Clark* county. The breach assigned is, that *Weathers* failed to return an execution in favour of *Hancock* against *A. Sumner,* administratrix of *W. B. Sumner,* deceased, which issued from the clerk's office of the *Clark* Circuit Court on the 10th of *September,* 1817, and was placed in the hands of *Weathers,* as sheriff, for collection. And it is averred, that *Newman,* administrator of *Hancock,* deceased, recovered a judgment against *Weathers* for failing to return said execution; and that an execution issued against *Weathers* on the judgment, and was returned nulla bona. Pleas, first, that no execution—issued from the clerk's office of the *Clark* Circuit Court in favour of *Hancock* against *A. Sumner,* administratrix of *W. B. Sumner,* deceased, on the 10th of *September,* 1817—was ever placed in the hands of *Weathers* for collection; secondly, that the supposed execution did not contain any command to the sheriff to make a return thereof. Verdict for the defendant. Motion for a new trial overruled. Bill of exceptions. Judgment for the defendant.

The bill of exceptions sets forth the whole of the evidence, and the instructions of the Court to the jury.

The plaintiff introduced the execution-docket of the *Clark*

Circuit Court, in which the issuing of the execution was entered in the ordinary form, except that the column which contained the species of execution was filled with the words "order of sale." He introduced *J. Shelby*, the clerk of the Court at the time of making said entry in the execution-docket, who testified—that *Weathers* was sheriff in *September*, 1817—that he was in the habit of delivering to *Weathers* executions generally—that his practice was to make out executions, and put them in a bundle on the table in his office, where *Weathers* received them—that when he handed executions to the attorneys or other persons besides the sheriff, he noted in the execution-docket to whom they were delivered—that it appeared from the docket in this case that no note or mark was made to show that the execution was delivered to any person—that when executions remained in the office, he made a remark to that effect in a column of the execution-docket—that though it was possible this execution had been delivered to some other person, and had never come to the hands of *Weathers*, yet he concluded he had delivered it to him from an inspection of the execution-docket—that he never issued an execution without inserting a return day—that he never issued but two or three orders of sale, and did not recollect whether they were returnable to a particular day or not—that the execution-docket in this case showed a regular return day—and that the column left for the insertion of the return still remained a blank.

The plaintiff, also, offered in evidence the judgment in favour of *Newman* against *Weathers*, for failing to return the execution mentioned in the declaration. This evidence was objected to, and the objection sustained.

The Court instructed the jury, that the evidence was insufficient in law to maintain the action.

The errors assigned are, first, that the Court erred in their refusal to permit the judgment against *Weathers* to be given in evidence; secondly, that they erred in their instructions to the jury.

In support of his first position, the plaintiff relies on the case of *Kip* v. *Brigham*, 6 Johns. R. 158, and on the case of *The Associate Judges of Clark County* v. *Wilson* (1). Neither of these cases is analogous. In *Kip* v. *Brigham*, the sheriff had taken a bond with surety from a prisoner for the gaol liberties; the

prisoner escaped; and the sheriff was sued for the escape. The sheriff gave notice of the suit to the prisoner's sureties. They attended at the trial and aided the sheriff in his defence; but judgment was given against the sheriff. In a suit by the sheriff against the sureties for this escape, the judgment against the sheriff was held to be conclusive against the sureties. In that case, the sureties were the only persons really liable. The sheriff, though liable to the action in the first instance, was entitled to a remuneration from the sureties for all the damages he sustained. The sureties having notice of the first action, and having assisted in the defence, were not afterwards permitted to controvert the facts established by the first judgment: The case of *Blasdale* v. *Babcock*, 1 Johns. R. 517, goes still further, and fixes the conclusiveness of the judgment against the party ultimately bound, not on the circumstance of his aiding in the defence, but on the fact of his having notice of the first action. See, also, *Bender* v. *Fromberger*, 4 Dall. 436.—*Hamilton* v. *Cutts*, 4 Mass. 349.

But the present case is entirely dissimilar. This is a claim against two co-obligors, who, so far as the plaintiff is concerned, are subject to the same liabilities. The judgment against the one concludes nothing against the other in behalf of the plaintiff, even if that other had notice of the first action, which, it seems, was not the case in this transaction. If *Shelby* had been sued alone, and had given notice to *Weathers* of the pendency of the action, and judgment had been given against him; that judgment, agreeably to the foregoing cases, would have been conclusive against *Weathers*, in a suit by *Shelby* against *Weathers* for the amount he was thus compelled to pay on account of the official default of *Weathers*: but it would have concluded nothing in behalf of the plaintiff against *Weathers*.

The case of *The Associate Judges of Clark* v. *Wilson* is equally inapplicable. The point there determined is, that when a devastavit has been established against an administrator by a regular judgment, the sureties are not permitted to controvert that fact. The law has placed the sureties of executors and administrators on a different footing from other sureties and co-obligors in general. They are not liable on the administration-bond, until a devastavit is judicially established; and, as the question of a devastavit is all that is controverted in the

suit against the executor or administrator, the decision is conclusive not only against the executor or administrator, but against the sureties also. But the sureties of a sheriff have no such indulgence. They are liable to be sued on the sheriff's bond in the first instance, either with or without the sheriff, before any thing has been determined as to the sheriff's default. *Weathers* and *Shelby* are in the same situation as other co-obligors; and the general rule is—that a judgment is evidence between the same parties, on the same subject, and all persons claiming under them; but that it does not extend to strangers, who have no opportunity of examining witnesses, making defence, or appealing to a higher tribunal. 1 Phil. Ev. 222. So that *Shelby* could not be bound by the judgment against *Weathers*, nor in any manner affected by it.

With regard to the instructions of the Court, it may be observed, that the testimony is not conclusively defective. And before a Court is authorised to give an unqualified charge to the jury, that the evidence is insufficient to support an action or a defence, there should be some absolute deficiency in the testimony, which could not be supplied by intendment or inference; as where some important fact was not proved at all. The jury being the constitutional judges not only of facts, but of the weight and extent of the evidence, they should be left in the unbiassed possession of every case, where there is evidence that conduces to prove every material fact in the case. When a party is unwilling to trust his case to a jury, he may demur to the evidence; but where the case is submitted to the jury, he is not entitled to the instruction of the Court in his favour on the weight and extent of the testimony, in every case where, on a demurrer to evidence, he would be entitled to a judgment. The Court should not give an unqualified charge to the jury that the evidence is insufficient, in every case where it would grant a new trial if a verdict was found contrary to its opinion. Such a charge should be given in such cases only where, if a verdict was found differently, the Court would be absolutely bound by law to set it aside. The testimony in this case is not of such a decisive character, that, if the jury had found a verdict for the plaintiff, the Court would have been absolutely bound to set it aside. The point where the testimony seems most defective, is, as to the nature of the process that is-

Nov. Term,
1826.

The Gover-
NOR
v.
Shelby.

sued in the case of *Hancock* v. *Sumner*. The breach assigned in the sheriff's bond is for failing to return an execution; and the process that issued seems to have been an order of sale. There are but a few cases where final process issues under the name of "orders of sale;" and these orders of sale are in the nature of executions, and subject to the same regulations; and where they differ in nothing but name from a venditioni exponas, we see no particular evil that can arise from permitting them to be described by the general term of executions. If this order of sale was not different in its nature from an execution, and we have some reason to believe it was not, the description of it in the declaration is such as to preclude the idea that the defendant was surprised by its being termed an execution, or that he would be liable to another action for the same cause. Taking the whole of the testimony together, we think it far from certain that the jury might not infer from it, the issuing of the execution, the delivering of it to *Weathers*, and his failure to return it. So that, although it may be extremely doubtful whether the plaintiff ought to recover or not, yet in order to give him the benefit of a jury trial, and to give the jury the full exercise of their powers, the case should be left with the jury to draw their own inferences from the testimony.

*Per Curiam.*—The judgment is reversed, and the verdict set aside. Cause remanded, &c.

*Naylor*, for the plaintiff.

*Howk* and *Dewey*, for the defendant.

(1) Vide Vol. I. of these Rep. 344.