## Chauncey P. Ives v. The Bank of Lansingburgh.

*Land contract: effect of release by vendee.* — Where the vendor in an executory contract for the purchase of lands receives from the vendee a quit claim deed of the lands, this is a rescission of the contract; and he can not afterwards maintain an action on notes which were given for the purchase price.

*Principal and surety: release of surety by discharging securities.* — Where the vendor in a land contract had taken notes payable to his own order for the purchase price, which notes he indorsed to a bank, and at the same time gave the bank a deed of the lands as security for the payment of the notes, and the bank afterwards took from the vendee a quit claim deed of the lands, without the vendor's knowledge, it was held that such deed was a rescission of the contract, and that the vendor was thereby discharged from his liability as indorser of the notes, at least to the extent of the value of the land.

12 MICH.—X.

An agreement between the vendee and the bank, at the time of the delivery of the quit claim deed, made without the knowledge of the vendor, that such deed should not affect the liability of the vendee on his notes, would not prevent its having this effect upon the rights of the vendor as indorser. To make such an agreement binding upon him, he should have been made a party to it.

*Heard April 29th.  Decided May 17th.*

Error to St. Joseph Circuit.

The Bank of Lansingburgh sued Ives on three promissory notes, dated August 12, 1857, for $1,066.66 each, payable respectively in three, four and five years from date, with ten per cent annual interest, all given by A. F. Bell, payable to the order of Ives, and by him indorsed. Two of these notes were past due, and four years interest on the other, when suit was brought.

Upon the trial, the defendant (below) gave evidence tending to show that said notes were given to him by A. F. Bell, in purchase by contract of certain lands which the defendant owned in Clinton county, Michigan; and that, by the terms of said contract, he was to convey said lands to said Bell, upon the payment by him of said notes; that at the time he, said defendant, had indorsed said notes over to said bank, he gave said bank a warranty deed of said land, subject to the rights of said Bell, under his said contract, and at the same time he transferred to said bank land certificates for fifteen hundred acres of land, and took from said bank an agreement to re-convey said lands, and re-assign said certificates, on the payment of said notes. The defendant introduced further evidence, tending to show that the said bank, without the knowledge or consent of the defendant, on the eighth day of February, 1862, procured from Bell and his wife a quit claim deed of all their right and interest in the lands for which said notes were given; and he also introduced the depositions of said Bell, and of one Jacob Baker, tending to show that the bank had obtained a judgment against said Bell on two of said notes, and

tending to show the value of said lands to be equal to the amount of said notes.

The plaintiff put in evidence the depositions of the president and cashier of said bank, tending to show that they purchased said notes from defendant; that a payment of one year's interest on each of said notes had been made by said Bell to said bank, since their indorsement over to said bank; and also that the judgment so recovered by said bank against said Bell for a portion of said notes, had not been satisfied or discharged, in whole or in part, and that the deed from Bell to the bank was procured for the purpose of obtaining a release of all Bell's rights in the said lands under said contract. The plaintiff also gave in evidence the testimony of said president and cashier of said bank, tending to show that the original deed of said Ives to said bank was taken by way of security for Ives's indorsement of said notes, and not as an absolute purchase of said lands; and that the release of said Bell's interest in said lands was not to affect his liability on said notes or the judgment recovered thereon.

The defendant's counsel then requested the Court to charge the jury, that the conveyance from Bell and wife to the bank, of February 11th, 1862, of the lands therein described, operated in law as a payment of the judgment and notes against Bell, and as a discharge of his contract for the purchase of said lands, and that the defendant was thereby discharged on his liability as an indorser upon said notes, at least to the extent of the value of said lands. The Court declined so to charge, and defendant excepted.

The counsel for the defendant further requested the Court to charge the jury, that the bank, by taking a deed from Bell of the lands for which said notes were given, without the knowledge or consent of the defendant, thereby discharged the defendant from his liability as indorser on said notes, at least to the extent of the value of said

lands. The Court refused so to charge, but did charge that the taking of the deed of the lands by the bank, from Bell, in the manner and under the circumstances stated, did not affect or destroy their claim against the defendant as indorser of said notes; to which refusal to charge and to the charge so given, the defendant excepted.

The jury, under the charge, returned a verdict for the plaintiff.

*Maynard & Meddaugh*, for plaintiff in error:

The facts show clearly:

1st. That the conveyance by Bell to the bank was not paid for by the bank, and that its object and purpose was simply to obtain from Bell a release of all his rights in the land under the contract.

2d. That the bank stood in place of Ives as to the contract in all respects.

We say therefore that the legal effect of the deed was to release Bell.

That the vendor of property by taking it back from the vendee thereby rescinds the contract of sale, and discharges the vendee from liability under it, is a proposition that will scarcely be denied: — 1 *Hill*, 511; 35 *Miss.* 559; 5 *Seld.* 536; 26 *Vt.* 624; 20 *Vt.* 538.

3d. By the release of Bell, the maker of the notes, Ives, who was liable only as indorser, was also discharged: — *Edw. on Bills*, 291–5. An indorser is treated as surety to the maker so far as this question is concerned: — 3 *Barb. Ch.* 41.

4th. The bank, by procuring the deed from Bell, and thereby releasing him, cancelled the contract between him and Ives, and deprived Ives of its advantages. The bank held this contract as one of the securities placed in their possession by Ives, and they were bound to return it to him upon his paying the debt.

It is well settled that if a creditor surrenders up or

releases any securities of the principal, he thereby dischar-
ges the principal to the value of such securities : — 8 *Pick.*
121; 2 *Am. Lead. Cas.* 343.

It can make no difference that the securities are placed
in the hands of the creditor by the surety. The principle
upon which the rule is based is the same, and the rule
must remain the same.

In this case, by the act of the bank, the notes were
discharged, and their value to Ives thereby lost.

It is no answer to say that, by paying his indebtedness
to the bank, Ives was entitled to the land.

*D. B. Duffield* and *G. V. N. Lothrop* for defendant
in error :

1st. The release by Bell to the bank could not ope-
rate, in law, as a payment of Bell's notes, or of the judg-
ment recovered on them. The notes were negotiable; the
bank bought them absolutely before they became due, and
took security.

Their claim against Bell was perfect. It did not depend
on any collateral contract or equities between Bell and the
defendant. As long as the acts of the bank only tended
to make their security more simple and perfect, and not to
change its character as security, it is difficult to see what
color there is to claim that such acts operate as payment.

The Court was asked to declare that these acts opera-
ted as *a payment.* Strict *payment* can only be made by
money, or something which commercially represents it; as
bank bills, checks, etc., of which there was nothing here
shown. But there is no payment between the parties
without an agreement express, or such acts as would imply
an agreement to that effect: — 2 *Greenl. Ev.* §§ 516, 526.

So there can be no accord and satisfaction without an
agreement to that effect, express or implied : — 2 *Pars
Cont.* 193, 197; 2 *Greenl. Ev.* § 516.

Now, this bill of exceptions not only does not disclose

any evidence tending to show any such agreement for *satisfaction*, but discloses evidence directly to the contrary.

It then stands thus: Bell releases to the bank, in the manner expressed in his deed, both understanding and intending that it should not discharge his personal liability.

Yet the Court is asked to declare, as a matter *of law*, that between themselves such discharge took effect *in spite* of their agreement and intention!

2d. In the next place, the Court was asked to declare that, as a matter of law, this release, being without the knowledge and consent of defendant Ives, discharged him as indorser, in whole or in part.

This request would be bad as assuming a fact which would have to be left to the jury.

But supposing there was no controversy about that fact, then we ask on what ground this discharge is claimed? It can not be because the debt of Bell is paid or satisfied, for that we have seen is not so. The debt is yet in full force against Bell.

Has any change been made in the condition of the parties or securities which does or can, operate to the detirment of the indorser? Let him show how; no time has been given; no portion of the security released; nothing done except that which may make the security more valuable.

Would Ives have been prejudiced by taking further security from Bell?

If so, then he may claim to be prejudiced here; for if this release operated at all, it was to give new value to the security.

MANNING J.:

We think the Court should have charged as requested, that the taking of the quit claim deed from Bell was a

rescission of the contract by which he had purchased the land of Ives.

Bell had purchased the land of Ives, and given the notes in question in payment, and was to receive a deed on paying the notes. Ives indorsed the notes to the bank, at the same time giving the bank a warranty deed of the land subject to Bell's interest therein under the con-tract.

The bank afterwards took a release from Bell of his interest in the land under the contract. Had Ives before he parted with the notes and land taken such a release from Bell, I think, from the authorities and on principle, that it would have been a rescission of the contract, and that Ives could not afterwards have sustained an action against Bell on the notes that were the consideration of the contract. See *Coon v. Reed,* 1 *Hilton,* 511; *Porter v. Vaughn,* 26 *Vt.* 624; *Arbuckle v. Hawks,* 20 *Vt.* 538.

The bank having succeeded to all the rights of Ives, stood in his place, and what would have been a rescission of the contract between Bell and Ives before the latter transferred his interest in the contract and land to the bank, would be a rescission of it between Bell and the bank after the bank became the owner of the notes and land. It is said, however, and the bill of exceptions states there was evidence tending to prove it, that there was an agreement between Bell and the bank, at the time the release was given, that Bell's liability on the notes should continue. But Ives was not a party to the agreement, and therefore can not be affected by it. His only liability on the notes was that of an indorser, and to make the agreement binding on him, he should have been a party to it.

The agreement was evidently made to parry if possible the legal effect of the release to annul the contract.

If Bell and the bank did not understand the release

would or might discharge Bell's liability on the notes, why was the agreement entered into?

If Bell had gone to the bank with the money to pay the notes, and, after handing it over and before the notes were delivered to him, had turned around and said to the bank, "let me have the money sixty or ninety days longer, and you may retain the notes, and I will agree my liability on them shall continue," — would Ives, the indorser, have been bound by such agreement?

Could the bank thereafter have sustained an action against him as indorser? I think not. The legal effect of such a transaction would have been a payment of the notes as to Ives. He could not have been bound by the agreement between Bell and the bank; neither is he by their agreement in the case before us. The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.