The Territory ex rel. Hall v. Bramble, Admr. et al.

MAY TERM, 1880.

PRESENT:

HON. PETER C. SHANNON, CHIEF JUSTICE.

HON. ALANSON H. BARNES,  
HON. GIDEON C. MOODY,      } ASSOCIATE JUSTICES.  
HON JEFFERSON P. KIDDER,

THE TERRITORY EX REL HALL V. BRAMBLE, ADMR. ET AL.

1. PROBATE COURT: DISTRICT COURT: SEPARATE JURISDICTIONS: ADMINISTRATOR'S BOND: SUIT ON. Under the Organic Act of this Territory the District and Probate Courts have separate and distinct jurisdictions: and the District Court cannot, in the first instance, entertain a suit upon an administrator's bond, charging him with *devastavit*, to establish the amount of his liability; his liability must first be fixed by the proper proceedings in the Probate Court.

2. SAME: SURETY. Nor can such suit be maintained against the surety on the administrator's bond before the liability of his principal has been thus fixed.

3. ACTION ON BOND: RECOVERY, AMOUNT OF. In an action on an administrator's bond, against principal and surety, no greater judgment can be rendered than the penalty of the bond, and no greater judgment against the principal than the surety.

The Territory ex rel. Hall v. Bramble, Admr. et al.

4. CREDITOR: REMEDY ON BOND. A creditor cannot enforce his remedy upon an administrator's bond, for *devastavit,* before the amount due him has been ascertained, and the Probate Court has decreed payment of the amount so found due.

5. SAME: INSOLVENT ESTATE. If the estate is insolvent the creditor must await the action of the Probate Court, decreeing the *pro rata* share of each creditor.

6. ALLOWANCES FOR SUPPORT: EXEMPT PROPERTY: DISTINCTION. Allowances provided by Statute tor the maintenance of the widow are entirely distinct from exempt property, hence chapter 37, laws of 1862, defining a homestead, is not repealed or modified by section 640, Civil Code of 1865-6, which specifies allowances.

7. SAME: HOMESTEAD. Section 640, Civil Code of 1865-6, modified section 71, Code of 1864-5, so that a homestead when of less value than $1,000 was made an allowance for use of the widow and minor heirs; when of greater value it was to pass to all the heirs according to the laws of succession, but was still exempt from liability for debts of the decedent.

8. INVENTORY: NO PROPERTY. An administrator is not bound to file an inventory and render an account where no property of the estate has come into his hands.

9. ADMINISTRATOR: REAL ESTATE, NOT AN ALLOWANCE: POSSESSION OF. Section 98, Probate Act of 1864-5, gives the administrator the power to reduce the real estate, not defined as an allowance, to his actual possession should he deem it necessary or the Probate Court so direct; but does not require him to do so, being permissive only.

*Appeal from the District Court of Yankton County.*

THE facts are fully stated in the opinion of the Court.

D. T. Bramble appeals.

*Tripp & Spink,* for appellants.

This was an action brought by the respondent against the appellant, D. T. Bramble and his sureties, for failure to perform his duties as administrator of the estate of J. D. Vanderhule, deceased. The action was tried to a jury before the HON. P. C. SHANNON, Judge, at the April term of the District Court of Yankton county, 1876, and a *special* verdict was returned therein, upon which the Judge rendered judgment against the sureties for the full amount of their bond and against the administrator for the amount of debt due to Emily Hall, the relator, from which judgment D. T.

Bramble and his sureties appeal to this court. And among the errors assigned they beg leave to call the attention of the Court to the following:

I. "The Court erred in granting plaintiff's motion for judgment upon the special verdict."

The judgment of a court upon a special verdict is subject to review by the upper court, like conclusions of law upon the Judge's findings, and such conclusions of law, and judgment in each case must be clearly deducible from the facts found; no inference can be indulged in. If the facts are not sufficient to sustain the judgment, it must fall. It seems to us there are no allegations or findings upon which plaintiffs could seriously ask for a judgment greater than the *amount* of the *bond*.

We are at loss to know upon what theory of this case plaintiffs obtained a judgment against Bramble for the full amount of the relator's, Emily Hall's claim. This is, or it is not, a suit upon the bond; if a suit upon the bond, no more can be recovered than the penalty of the bond; if not upon the bond, there is no cause of action against the sureties, and as to them the judgment falls. The allegations of the complaint are intended to set out a breach of the bond and a *devastavit* of the estate. The only breaches of the bond alleged are that " he failed to file any inventory, appraisement or sale-list of the estate; every other statement is too vague and indefinite to be styled an allegation. And if *this* is an allegation of a breach of the bond, it is at most but a technical breach. No damages are alleged or found to have resulted therefrom, without which allegation or finding no benefit can accrue to this plaintiff. (Willard Ex., 225, 266; *People v. McDonald*, 1 Cow., 189; *Scarborough v. State*, 24 Ark., 20; Redfield on Wills.)

An administrator is not bound to render an account and file an inventory when no property has come to his hands. (*Walker v. Hall*, 1 Pick., 20.)

By the terms of the bond Bramble was "to administer all the goods, chattels, credits and estate that should come to his possession, and out of the same to pay and discharge all debts and charges on the same, or such dividends thereon, as should be ordered and decreed by the Probate Court." There is no allega-

tion or finding that the Probate Court has ever ordered or decreed that he should pay any money to this relator. There is an allegation that she obtained a judgment in the District Court, but such judgment by the American decisions, is at most, but a liquidation or establishing the validity of the claim as the basis of a probate order for its payment. Bramble, without such order and allowance by the Probate Court (which was never granted,) if he had the funds, should not have paid this claim. (*Chase v. Swain,* 9 Cal., 130; Revised Codes, p. 669, § 152; *Walker v. Deihl,* 79 Ills., 473.)

It is very doubtful at best whether the jurisdiction of the Probate Court is not exclusive in probate matters, and whether such judgment against an administrator has any validity whatever. (*Price v. Deitrich,* 12 Wis., 699. [626.]

Was it not incumbent upon the plaintiff in this case to establish the following facts upon which to base a recovery:

1st. That Vanderhule died intestate.

2d. That he and his sureties executed this bond.

3d. That Bramble took the oath, qualified and entered upon the duties of administrator.

4th. That as administrator he has received property of the intestate sufficient to pay his indebtedness.

5th. That he has wasted or converted to his own use such property, and neglects and refuses to pay over the same upon the order or decree of the Probate Court.

Of these essential facts the plaintiff alleges but one, to-wit, that defendants executed the bond. And by the findings of the jury it appears that the administrator could not have received any personal property, for the deceased died possessed of none except his wearing apparel. See 6th finding, Abstract 8, which is one of the allowances that passed immediately to the widow. (Civil Code of 1865-6, § 640.)

That all the real estate he owned at the time of his death were the two lots and the house thereon in which they resided at the time of his death. The jury have found that the value of this real property at intestate's decease was $1,500, and that Bramble

has ever since his appointment as administrator "permitted the widow to occupy and enjoy the same." If it was a homestead she had a right "to occupy and enjoy the same," whether he "permitted" it or not, and if the premises were not a homestead, there is no allegation or finding that the widow is without means of her own and unable to pay a reasonable rent for said premises, so that the same has become lost to the estate. So far as the record discloses, she may have even paid rent to the administrator, and the amount may still be in his hands, awaiting the proper order of the Probate Court. There is no allegation or finding that there are no funds in the hands of the administrator; and so long as there are funds in the hands of the administrator, creditors cannot resort to his bond, if they can at all, before an accounting. (34 Texas, 386, (cited;) U. S. Digest, (1872,) 285, § 76.)

This relator could bring no suit upon the bond until an accounting in the Probate Court was had, and the amount due from the administrator determined by that court. The District Court cannot, by a summary suit upon the bond of the administrator usurp the jurisdiction of the Probate Court. At common law the *devastavit* must first be determined before the sureties can be made to answer, and the same rule prevails in all the states to-day where it has not been expressly changed by Statute. (*Smith v. Everett*, 50 Miss., 575–82–3; *Myers v. Fritz*, 4 Pa. St., 345–6; *Com. v. Stubs*, 11 Pa. St., 150; *Com. v. Molz*, 10 Pa. St., 527; *Boyd v. Com.*, 36 Pa. St., 355; *Com. v. Raser*, 62 Pa. St., 436; *People v. Miller et al*, 1 Scam. (Ills.,) 83; *Goodwin et al v. Wilson*, 1 Blackf., 344; *Governor v. Shelby*, 2 Blackf., 26–8; *Salyer v. State*, 5 Ind., 202; *Godolfo v. Walker*, 16 Ohio, (N. S.,) 251; *Hamlin v. Kinney*, 2 Oregon, 91; *Wood v. Myrick*, 16 Minn., 494–505; *Waterman v. Millard*, 22 Minn., 261; 2 Redfield on wills, 83 and 248; 3 Ohio, 225; 4 Munf., 98; *Carow v. Mowatt*, 2 Edwards' Ch., 57; *Jones v. Anderson*, 4 McCord, 113; *Stewart v. Treasurer*, 4 Ham., 98; *Gordon v. Justices*, etc., 1 Munf., 1; *Inglehart v. State*, 2 Gill. & J., 235; *Coney v. Williams*, 9 Mass., 114.)

When an administrator commits a *devastavit* of an insolvent estate, the most a creditor can recover is his *pro rata* share. (*Bowen et al v. Burnett*, 1 Pinney, 658 and 663; *Walker v. Hill*, 17 Mass., 379; *Walker v. Bradley*, 3 Pick., 261.)

The District Court erred in permitting the plaintiff to prove the value, and the rents and profits of intestate's homestead, and in charging the jury that "the widow on the death of the intestate was only entitled to a thousand dollars out of the homestead."

Homestead laws are liberally construed. (*Johnson v. Harrison,* Administrator, 41 Wis., 381.)

The widow has been allowed the homestead and certain personal property, as allowances and as exempt, out of the intestate's estate, ever since the organization of the Territory. (Laws 1862, Ch. 37, § 1; Laws 1862, p. 35, §§ 6 and 19; Laws 1864, Probate Code, §§ 47, 71, 91 and 110; Revised Codes, §§ 128, 129 and 131, Probate Code.) Under the law as it stood prior to 1865–6, the administrator took possession of all the real and personal property, and immediately turned over to the widow certain allowances of the personal property, retaining possession of all the real property including the homestead, and all the personal property including the exempt property, except the allowance provided for by section 71 of the Probate Code. (See Probate Code, 1864–5, §§ 47 and 98.)

The Civil Code of 1865–6 changed the rule and allowed the administrator to take possession of all the real and personal property; but in addition to the allowances of personal property it required the administrator to turn over the homestead to the widow when it did not exceed in value $1,000. (Sections 638, 640 and 641.)

So as the law stood at the time of the intestate's death, the administrator was entitled to the possession of all the real estate including the homestead of over $1,000, and all the exempt personal property except the allowances named in section 640, during the administration. And if there had been anything to administer of this estate, the administrator had the right to have taken possession of it, and the rents and profits thereof during such administration.

The court seems to have misunderstood section 640 to mean a setting apart of the exempt property instead of the widow's allowance. The allowances created by Statute stand upon a different footing entirely from exempt property. They are governed by different laws of descent. They cannot be taken from the widow

by will, even, any more than dower, while the exempt property is subject to will, and descends like other property and is subject to laws of distribution. (*Miller v. Steppen*, 32 Mich., 202.)

At common law the real estate descended at once to the heir. The administrator had no right of possession and no control whatever of it. (*Rubottom v. Morrow, administrator*, 24 Ind., 202–4; *Sebastian v. Johnson*, 72 Ills., 282; *Aubuchon v. Long*, 23 Mo., 99; *Sherman v. Dutch*, 16 Ills., 283 and 177; *Hopkins v. McCan*, 19 Ills., 112–15.)

And all Statutes changing the common law rule are construed strictly, so that in those states where the administrator has a right to sell real estate and pay debts, the courts hold that he has not thereby any right of possession. (*Henshaw v. Blood*, 1 Mass., 35; *Drinkwater v. Drinkwater*, 4 Mass., 354; 16 Mass., 280; 72 Ills., 282.)

And in Montana and Missouri where the administrator has control of all evidences of title to real estate and power to lease and sell real estate, the courts construe the power strictly and forbid the administrator to maintain ejectment. (*Carrhart v. Mon. Min. Co.*, 1 Mon., 245–51; *Burdyne v. Mackey, Exr.*, 7 Mo., 374.)

Our Statute then gave the administrator " the right to possession of all the real as well as personal estate of the deceased, and to receive the rents, issues and profits of the real estate until the estate be settled or is delivered over by order of the Probate Court to the heirs and devisees." (Section 98, Probate Code, 1865–6.)

This Statute is the same as that of Wisconsin, Michigan, Oregon, and Nebraska, in each of which States it has received a judicial construction, the courts holding that it gives a mere naked right to take possession of the real estate to be exercised or not in his own discretion. That the title passes *eo instanti* to the heir as at common law, and he is entitled to the possession at once, if not taken possession of by the administrator, and that the heir alone can maintain ejectment. That this right to possession by the administrator is so intangible a thing that he cannot lease for any definite time, and he cannot sell his possessory right. (*Kline v. Moulton*, 11 Mich., 370 and 382; *Marom v. Schilling*, 12 Mich., 356; *Holbrook v. Campau*, 22 Mich., 288; *Jones v. Billstein et al*, 28 Wis., 221–7–8; *Filby, administrator, v. Carrier*, 45 Wis., 469; *Flood v.*

*Pilgrim,* 32 Wis., 376; *Hall's heirs v. Hall,* 4 Ala., 297; *Nebraska ex rel. v. Keeder,* 5 Neb.; 203; *King v. Boye* ·, 4 Oregon, 326.)

Such being the law, it was Bramble's duty to do just as he did. Finding no property or estate to administer, no property but the homestead, he declined to take possession of it. He would have been restrained from doing so had he attempted it. On the other hand the remedy of the creditors was ample through the Probate Court, to require him to act, or to appoint some one who would, in accordance with their view of the law. (Probate Code, 1864–5, § 82.)

At most, it was, under the decisions, but the exercise of a discretion on Bramble's part whether or not he would take possession of this real property, without considering its character of a homestead, and he being made the judge of the exigencies, in the first instance, upon which he would exercise the discretion of taking possession, we are wholly at a loss to see how he committed a breach of his bond when he elected not to take possession, in absence of any order or decree requiring it.

But this was a homestead, and as such was absolutely exempt. The law of 1864–5 expressly reserved the exempt property from sale for debts of decedents. (See §§ 47, 91, 97 and 110.)

The Civil Code of 1865–6 does not aim to repeal the Probate Code of 1864–5, but it still remained in force, except where their provisions were inconsistent. Repeals by implication are not favored. (Estate of Wally, 11 Nev., 264.)

Section 615, Civil Code, in naming what property shall be resorted to, expressly reserves the exempt property. Section 642 provides that "*all property* remaining after the paying of *such debts* of a decedent as by law can be *collected by execution,* is to be distributed." It will hardly be contended that this was a debt that could be collected by execution against decedent. There were no debts against decedent that could be collected by execution. All the property of Vanderhule was therefore to go to the heirs at once under the law of descent as cast by that section. But the Legislature, to make "assurance doubly sure," for fear there might be something in the Civil Code that would be construed to impair the exemption law, at the close added the *proviso,* "that nothing

contained in this Code shall be construed to abrogate or impair the provisions of any Statute exempting property from levy under execution for debt," which is almost the exact wording of the title of the Act of 1862, exempting the homestead of the deceased. (Chapter 27, Laws of 1862.)

*Gamble Bros.* and *Oliver Shannon,* for respondent. No brief filed.

KIDDER, J.—This was an action commenced in the District Court of Yankton county, by the Territory of Dakota, at the relation of Emily Hall, plaintiff, claiming to recover of the defendant, Bramble, the sum of six hundred and ninety-eight dollars and ninety cents, the amount of a judgment formerly obtained by the relator in that court against Bramble as administrator of the estate of J. D. Vanderhule, deceased, and the sum of five hundred dollars, the amount of Bramble's administration bond, against F. L. Van Tassel and Sarah Bordeno, the personal representatives of Wm. Bordeno, surety.

The amended complaint set out in the transcript shows the action to have been at one time prosecuted in the name of Emily Hall, plaintiff, and to have been subsequently amended on or about the time of trial, on plaintiff's motion, by making the Territory of Dakota plaintiff at the relation of Emily Hall.

From the transcript it appears that J. D. Vanderhule, the intestate, died at Yankton, Dakota, about March 26, 1872, leaving a widow who still survives him. That the intestate left no personal property of any description, except his wearing apparel, and no real estate except a dwelling house and two lots forty-four by one hundred and fifty feet each, in the city of Yankton where they were residing at the time of his death, and where the widow has since continued to reside. That prior to the death of Vanderhule he became indebted to the relator, Emily Hall, and was so indebted at the time of his death. That after his death, Bramble, the defendant, was appointed administrator of his estate and gave a bond, but whether he entered upon the duties of administrator, or did any act as such, the record is silent and unsatisfactory. It

is alleged in the complaint that the relator, Emily Hall, recovered a judgment against Bramble as administrator, in the District Court of Yankton county, for the amount claimed in this action; but it does not appear that any order or decree was ever entered in the Probate Court requiring Bramble to pay the amount of the judgment so obtained; nor does it appear that any steps or proceedings were ever had or taken in the Probate Court to charge Bramble as administrator and fix his liability, or that any accounting was ever had. So far as the record discloses, the widow of Vanderhule has had uninterrupted use and occupation of the real property since the death of the intestate, and still continues to occupy the same.

The jury returned a special verdict, concluding with a general finding upon the other issues, in favor of the plaintiff; upon which verdict the court below rendered a judgment against Bramble for the full amount of the judgment theretofoie entered against him as administrator, and against the personal representatives of the surety, Bordeno, for the amount of the bond, from which judgment all the defendants appeal to this court.

The defendants claim, *first:* that no greater judgment could be rendered against them, or either of them, than the penalty of the bond; that the bond was the measure of their undertaking; that this was an action against *joint* defendants, and that no greater recovery could be had against the principal than the surety, and in this it would seem that the position of the defendants is correct. This must be treated as an action on the bond, or a personal action of *devastavit* against the administrator, they cannot be joined in one action.  If it is not an action on the bond no judgment can be rendered against the surety; the surety is responsible only on his undertaking, and if this is to be considered a personal action against the administrator, the relator erred in amending her complaint in making the Territory of Dakota the plaintiff upon her relation, for the Territory of Dakota has no right of action only as obligee of the bond. It has no personal action against Bramble for *devastavit*, but as this error might look only to a modification and not a reversal of the judgment, we pass to consider the other errors claimed by the appellants.

It is objected that no steps have been taken in the Probate Court

to charge the administrator, Bramble, and fix his personal liability
before bringing this action . upon the bond.     Can the District
Court, in the first instance, entertain a suit upon an adminis-
trator's bond charging him with a *devastavit* of the estate, and
in this indirect manner encroach upon and usurp the duties and
powers of the Probate Court?    By the Organic Act of the Terri-
tory the District and Probate Courts are separately named and
enumerated; and while the Act is silent as to the jurisdiction of
the Probate Court, such jurisdiction is as separate and distinct
and as clearly defined by the designation of "Probate Court" as
any legislative enactment could make it.    Superior courts all
understand and respect the jurisdiction of Probate Courts, and
probate powers and jurisdiction are very rarely conferred upon
courts of general jurisdiction, and never except by express enact-
ment.   The Territory of Utah undertook by legislative enactment
to confer upon her Probate Courts, under an Organic Act like
ours, a criminal jurisdiction to hear and determine offenses against
the Territorial laws, but the Supreme Court of the United States
in a very able opinion, *Ferris v. Higley,* ——, 375, denied such right,
holding that the Legislature of a Territory has no right or power
to confer any additional jurisdiction upon the *Probate Court* desig-
nated as such in the Organic Act.    Says the learned Court in
delivering its opinion :   "It is sufficient to say to the present hour
it has been the almost invariable rule among the people who
make the common law the basis of their judicial system to have a
distinct tribunal for the establishment of wills and the adminis-
tration of the estates of men dying with or without wills," indi-
cating and determining by this opinion, that our Probate Court is
a "distinct tribunal" for probate business and probate jurisdiction
only.    If, therefore, the Legislature cannot confer any additional
jurisdiction upon the Probate Court by express enactment, can it
be claimed that the jurisdiction given to the Probate Court by the
Organic Act can be taken away from it, or conferred upon another
court in the absence of any Statute to that effect?    The Organic
Act confers upon the District Court "chancery and common law
jurisdiction," but not probate powers, while the several acts of the
Territorial Legislature have enumerated the powers and jurisdic-
tion of the Probate Courts, and in no case have they attempted to

extend such jurisdiction to the District Courts except by appeal.

Bramble cannot be liable for a *devastavit* of the estate to an amount greater than the estate has lost or has been wasted, and proceeding upon this well settled principle, the lower court has attempted upon a determination of the issues by the special finding of the jury to ascertain such liability, such as finding the value of the rents and profits of the estate, etc.; but without stopping to inquire into the sufficiency of the facts so found to support the judgment, we pause *in limine* to consider the more serious objection presented, whether the jury in this case could make such findings or not?

At common law the rule seems to be well settled, that the *devastavit* must first be established in a separate suit against the principal; the surety could not be heard to plead the good administration of the principal, and a recovery against the principal was conclusive on the surety. We are aware that this rule has been changed in some States by Statutes, and the obligee of the undertaking is permitted to bring suit in the first instance upon the bond; but our attention has not been called to any Statute of our Territory changing this well settled rule of the common law, and in the absence of such Statute we cannot see any right of recovery against the administrator until his liability has been fixed by some proceeding in the Probate Court. It was, however, urged upon the hearing in this court, that Bramble had been cited by the Probate Court to account, and that he answered, in substance, that there was no property to administer; that Vanderhule left no property but the two lots and dwelling house (the homestead,) which was claimed and occupied by the widow as such. The record fails to disclose such facts, and, if so, they would argue in favor of the administrator and not against him; we could thereby be led to the conclusion that the Probate Court, upon such an answer to his citation, agreed with the administrator, that there was not any estate upon which he could administer, and thereupon refused to require him to sell the homestead, or pay the claim of this relator. Her remedy was ample and adequate in this regard. She could have the Probate Court enter its decision of record, and if aggrieved thereby she could have appealed to the District Court

The Territory ex rel. Hall v. Bramble, Admr. et al.

and have had its correctness passed upon here; but failing to obtain any action of the Probate Court in the premises, we do not see how she can ask to be heard in the District Court in the first instance in a suit upon the bond as to matters peculiarly cognizable in the Probate Court.

In speaking of the jurisdiction of the Probate Court, under a Statute similar to ours, the Mississippi Supreme Court, in *Smith v. Everett*, 50 Miss., 575, says: "The ordinary bond for faithful administration is not intended to transfer the jurisdiction of questions connected with such administration from the appropriate and exclusive sphere of the courts exercising probate jurisdiction to that of common law courts. But these bonds are designed to secure the enforcement of the decrees of the courts having jurisdiction in matters testamentary and of administration. * * But after the amount due the party in interest has been ascertained, and the court administering the probate laws has decreed the payment of the amount so found due, the party is in a condition to enforce his remedy upon the administrator's bond in a court of law."

The Supreme Court of Pennsylvania, in *Myers v. Fritz*, 4 Pa. St., 344, lays down the common law rule as follows: "That the liability of the surety is contingent and not absolute, and therefore before suit can be brought against the surety, the party in interest, whether creditor, legatee, heir, or distributee must proceed against the administrator and fix him personally for the debt." And in *Com. v. Stubs*, 11 Pa. St., 150, after affirming the rule laid down in *Myers v. Fritz*, adds: "It is not required that the administrator be pushed to insolvency, but it is sufficient that a decree be entered in the Orphan's Court ascertaining the amount of the personal responsibility of the administrator to the particular creditor, legatee, or distributee, before suing on the bond."

This same rule was extended to the bond of a trustee in *Boyd v. Com.*, 30 Pa. St., 436, and in the same court, in *Com. v. Raser*, 62 Pa. St., 436, the same doctrine is applied to a guardian's bond, the court holding that the guardian and sureties cannot be sued upon the guardian's bond until his liability has first been determined by a decree of the Orphan's Court.

In Illinois it is expressly provided by Statute, " That whenever any executor or administrator shall fail to comply with any or all of the covenants of his bond, an action may be forthwith instituted and maintained on such bond against the principals or sureties or both, and the failure aforesaid shall be a sufficient breach to authorize a recovery in the same manner as though a *devastavit* had been previously established against such executor or administrator," plainly recognizing the common law rule as her courts express it in *The People v. Miller et al*, 1 Scam., 83, viz : " This Statute has dispensed with proof of a *devastavit* according to the course of the common law."

The Indiana Supreme Court holding to the same common law rule, says : " If a *devastavit* be established against an administrator, his sureties cannot afterwards controvert the *devastavit*." *Gov. v. Shelby*, 2 Blackf., 26.

In *Hamlin et al v. Kinney et al*, 2 Oregon, 91, under a Statute almost exactly like ours of 1864–5, the defendants brought an action on the administrator's bond against Hamlin and his sureties to recover the amount of an allowance under the Statute which Hamlin had failed to pay over pending the settlement of the estate. It did not appear that any steps had been taken in the Probate Court to enforce payment of the allowance or charge the administrator. The Court says : " Can the bond of the executor and his sureties be made liable for the default of the executor to pay such allowance before some action in the matter is had in the Probate Court? Such an allowance being made by the Probate Court, if assets come into the hands of the executor and he neglect or refuse to pay the allowance, then application could be made for an order of the Probate Court on the executor to pay the same, and if he still neglected or refused, then the Probate Court could enforce its order or revoke the letters of such executor and appoint an administrator who would obey its order," and that court concludes that the action cannot be maintained.

Among the large class of decisions holding the same rule of the common law, *vide Wood v. Myrick*, 16 Minn., 494; *Waterman v. Millard*, 22 id., 26; 3 Ohio, 225; 4 Montana, 98; *Carow v. Mowatt*, 2 Edwards' Ch., 57; *Jones v. Anderson*, 4 McCord, 113; *Stewart v.*

*Treasurer*, 4 Ham., 98; *Gordon v. Justices, etc.*, 1 Munf., 1; *Inglehart v. State*, 2 Gill. and J., 235; *Coney v. Williams*, 9 Mass., 114; *Holbrook v. Campau*, 22 Mich., 288; *Probate Court v. Van Duzer et al*, 13 Vt., 135, and cases there cited; 2 Redfield on Wills, 83, 248.

Again, by the terms of the bond, Bramble was only bound to " pay and discharge all debts and charges, chargeable against the estate, or such dividends thereon as should be ordered or decreed by the Probate Court. If there was not enough of the estate to pay the debts in full, as it appears was the case here, the administrator would be personally liable for any debt he might pay in full. If the estate was insolvent he must await the action of the Probate Court decreeing the *pro rata* share of each creditor. If there were other creditors and other indebtedness against the estate, as the appellants allege in their answer and offer to prove upon the trial, all that Emily Hall was entitled to recover was her *pro rata* share after it had been determined and allowed by the Probate Court. The Territorial Court of Wisconsin so held in a case very much in point, *Bowen et al v. Burnett*, 1 Pinney, 658; see also *Walker v. Hill*, 17 Mass., 380; 8 Mass., 282; 3 Pick., 261; 7 Pick., 46 and 4 Cal., 308.

But there is another objection raised by the appellants to that portion of the charge of the Court, wherein it says: " That by our law then in existence, the widow on the death of Vanderhule was only entitled to a thousand dollars out of the homestead; and that the one thousand dollars   *   *   *   should have been made the subject of a separate appraisement, and if the homestead had been found worth two thousand, two thousand five hundred, or three thousand dollars, he should have taken steps to sell it to the best advantage," together with the admission of the testimony on the part of plaintiff as to the value of the homestead, over the objection of the defendants. The appellants claim under the Statutes then in force, that this real property was all a homestead, no matter what its value might be, and as such was exempt from the debts of the decedent; and if this position is correct then clearly there was no breach of the bond and the instruction of the Court was error, for the only property left by the intestate was this real property, and his wearing apparel, which passed at once

to the widow as an allowance under the Statute of 1864–5, Probate Code, § 71.    There was, therefore, nothing for the administrator to account for.    An administrator is not bound to file an inventory and render an account when no property has come to his hands. (*Walker et al v. Hall et al*, 1 Pick., 20;) *vide* also a case in Iowa parallel to this in the *Northwestern Reporter*, Vol. 3, (New Series,) No. 6, p. 211, *Burdick v. Kent et al*, filed Dec. 10, 1879, reported since the arguments in this case.

At common law the real estate descended at once to the heir. The heir had the immediate right of possession.    Now the administrator gets possession of the real property, and the right to sell the same to pay the debts of the intestate, by virtue of some Statute, in derogation of the well settled common law rule, in every case where he gets the right at all.

Our Statute then in force provided that: "If the goods, chattels, rights and credits in the hands of the executor or administrator shall not be sufficient to pay the debts of the deceased and the expenses of administration, the whole of his real estate *not exempt by law*, or so much thereof as may be necessary, may be sold for that purpose by the executor or administrator after obtaining license therefor, in the manner provided by law."    (Laws 1864–5, Probate Code, § 97.)    Under this law as it then was the administrator could not sell the *exempt* property, and our inquiry is, was this real property exempt?    The law of 1862, which was the first Statute of the Territory on exemptions, chapter 37, § 1, after defining a homestead, declares: "This section shall be construed to exempt such homestead in the manner aforesaid, during the time it shall be owned or occupied by the widow, or minor child, or children of any deceased person, who was when living entitled to the benefit of this Act."    No question is raised but the deceased when living was entitled to hold this property as a homestead, and that under the concluding portion of this section it is conceded that the widow could claim the property as exempt. But it is claimed by the plaintiff that section 640 of the Civil Code of 1865–6, page 116, modified this provision of the Act of 1862, so that the widow was only entitled to a homestead not exceeding in value one thousand dollars; and the court below took this view in

admitting testimony as to the value of the real property, and in his charge to the jury. We must, therefore, inquire what effect this section 640 has upon the homesteads of deceased persons? Repeals by implication are not favored, and if the two sections can stand together the courts will so construe them. It will, therefore, be necessary to examine the legislation on this subject. The laws of 1864–5, chapter 18, was the first general probate law enacted in the Territory, and it continued to be the law regulating these courts down to the Revised Codes, except as modified by conflicting Statutes. This Act of 1864–5, expressly retained the Homestead Act of 1862, in force. Section 91 of that Act provides: " Any laws now existing or hereafter passed exempting property from execution by seizure and sale, shall also apply to the property of the estates of intestates." And again in section 110 it is provided : " All property real and personal, goods and chattels, rights and credits, interests and estates, exempt by law from seizure and sale under execution; and all property real and personal, reserved by law to widows and minor children, be and the same is exempt as provided by law, anything in this Act to the reverse notwithstanding." It is in fact conceded that this Homestead Act of 1862 continued in force till it was expressly repealed by chapter 37 of the laws of 1874–5, except so far as section 640 of the Civil Code modified it as to homesteads of deceased persons. On examination of section 640 it will be observed, it is not aiming to describe what property is or is not exempt. It is a section of the chapter on " Succession," and reads as follows: " Where a decedent leaves a husband, wife or child, the following property is to be immediately delivered by the personal representative to such husband, wife or child, or children, and is not to be deemed assets : 1. Any estate or interest to the value of one thousand dollars, in a lot and buildings thereon, occupied as a residence, and which by law is exempt as a homestead, from sale on execution."

The eight following subdivisions enumerate the different kinds of personal property which are also immediately to be turned over. It will be apparent that this section is very similar to section 71 of the Act of 1864–5, and specifies like that section the various kinds of personal property which are made *allowances* to the widow and minor children. Neither section claims to enu-

merate exempt property; in fact, a number of things are enu-
merated not exempt, and many exempt articles are not therein
enumerated, yet no one would claim that section 71 enumerated
the only property that was *exempt* to the widow.    It enumerates
only such property as did not await final distribution—her *allow-
ances* for maintenance until the final distribution.    And did sec-
tion 640 any more than take the place of section 71?   ·These
allowances are entirely distinct from exempt property; they are
governed by different laws of descent; they attach, like dower, to
the thing itself, and are placed beyond the will of the testator.
The Supreme Court of Mich., in *Miller v. Steppen*, 32 Mich., 202,
says:    " Now we understand the allowances provided for by
Statute to belong to the matter of administration of the estate, and
to rest on higher grounds than the claims of distributees.    They
are quite distinct from distribution and are inseparably connected
with the course of settlement of the estate.    They are grounded
upon a policy not unlike that which allowed the widow her quar-
antine and a reasonable estovers at common law, and in some
measure are deemed suitable means to enable administration to
be carried to that stage at which distribution may be made, and
the testator by the terms of his will can no more positively ex-
clude them than he can the payment of debts and the legal
charges of administration."    We are further impelled to the con-
clusion by examining other sections of the same Act, that section
640 was intended only to enumerate the widow's allowances, and
not to change the law of exemptions.    Section 615 reads as fol-
lows:    " When a decedent dies intestate, the property, except such
as is otherwise disposed of under section 640 of this Code, and
*such as is exempt under the Code of Civil Procedure, or any Statute
exempting property from execution, is to be resorted to*, in the following
order, in payment of debts:

" 1.    Personal property.

·" 2.    Real property other than the estates of freehold.

" 3.    Estates of freehold."

There are designated in this section two classes of property that
are to be excepted out of the estate, and the balance to be resorted
to for the payment of debts.    If section 640 includes the exempt

property, why add "and *such* as is *exempt?*    Does not the Legislature clearly mean to save the widow and minor children their allowances, and to the heirs the exemptions?    And that the remaining property only shall be resorted to for the payment of debts?    Section 643 says:    "All property remaining after paying of such debts of a decedent as by law can be collected by execution    *    *    is to be distributed," etc.    This section plainly points out to the administrator what debts he is to pay, viz:    " Such debts of a decedent as can be collected by execution."

But for fear there might be some misconstruction given to some sections of the act whereby the exemption law might be affected, the Legislature in the concluding section of the same act (§. 2033), appended these words:    "*Provided further*,    That nothing contained in this Code shall be so construed as to abrogate or impair the provisions of any statute exempting property from levy under execution for debt."    The title of the act of 1862 exempting the homestead, which it is contended section 640 of this act modifies, is entitled:    "*An act exempting property from execution, writ of attachment or any other final process of a court.*"    If that provision did not refer to the exemption law of 1862, what exemption law did it refer to?    That was the only law exempting property from execution that had ever been passed, and remained in force unamended and entire until that same Legislature amended the sections on personal property, leaving the sections on homestead as they were first enacted.    It is clear that in the view we have taken of these sections, that section 640 does not repeal or modify the exemption law of 1862, but does modify section 71 of the Code of 1864–5, so that, whereas, under the Code of 1864–5, the administrator could take and hold possession of all the real property— including the homestead—he was by section 640 (Civil Code 1865–6) required to turn over the homestead as an *allowance* when its value did not exceed $1,000.    Section 98 of the probate acts of 1864–5, provides that " The executor or administrator shall have a right to the possession of *all the real* as well as the personal property of the deceased, and may receive the rents, issues and profits of the real estate until the estate shall have been settled or until delivered over by order of the Probate Court to the heirs or devisees."    The only question now arising is:    Was it the duty

of the administrator, under this statute, to take posession of this homestead and apply the rents, issues and profits to the discharge of decedent's debts? If the statute was mandatory and this was a case within the statute in which he was required to take possession and account therefor, he committed a breach of his duty in failing to do so. Our statute was taken from Wisconsin, whence it was taken from Michigan, and was afterwards enacted in Nebraska and Oregon. A similar statute is found in Alabama and Mississippi—in all of which States it has received a judicial construction—and under the rule that a Legislature taking a statute from the laws of another State gives to the new enactment the same construction given to it by the courts of the State from which it was taken, we may with profit inquire what construction was placed upon this statute by the courts of Wisconsin and Michigan.

In *Cline v. Moulton*, 11 Mich., 390, the administrator had sold the real property without obtaining license as required by the statute, and the grantee under the deed, while admitting that he got no title to the land, contended that he got all the right the administrator had to it, the right of possession, but the Court denied the right and held that the administrator had no right of possession that he could sell or transfer.

In *Marom v. Schelling*, 12 Mich., 361, the Court says: The object of the statute was to permit the personal representative to take possession of the real estate and hold it until it should be sold by him under a license from the Probate Court, or final settlement of the estate, if he *thought proper to do so*, unless ordered to deliver over to the heir by the Probate Court." Affirming the same doctrine of a prior case, *Streeter v. Patten*, 7 Mich., 341, and deciding that the heir might maintain ejectment for the real property against all persons except the administrator in possession.

In a later case in the same court, *Holbrook v. Campau*, 22 Mich., 288, where the administrator undertook to take possession of the real property when the personal property was ample to pay all the debts—and the heir brought an action to restrain—Judge Cooley in sustaining the right of the heir to restrain the adminis-

MAY TERM, 1880. 209

The Territory ex rel. Hall v. Bramble, Admr. et al.

trator from taking possession of the real property when the personal property was sufficient to pay the debts of the decedent, says: "Our Statute gives the administrator the right to take possession of the real estate of the deceased while the estate is in process of settlement, but it does not contemplate that he will assert this right unless necessary; generally it must be undoubtedly left *to him to determine* whether there is any such necessity or not." Holding in all these cases that the Statute is permissive, he has the right to the possession, and he is the judge of whether he will or will not take possession in the first instance of the real property, subject of course to the power of the court to restrain him if he acts arbitrarily in taking possession, and perhaps in compelling him so to do in a proper case if he refuse. If then the administrator is made judge of whether he will or will not take possession of the real property, and he decides not to take such possession, a court in the absence of any order of the Probate Court requiring him so to do, would be slow in declaring that a violation or breach of his bond, which the Statute gave him the right to do.

Wisconsin maintains this construction of the Statute to the fullest extent—that the administrator decides whether he will or will not take possession—that the Statute is permissive only, and that the whole real estate passes at once to the heir as at common law, and he has the right to immediate possession, subject only to the right of the administrator to the possession in a proper case, and may maintain ejectment therefor.

In *Jones v. Billstein et al*, 28 Wis., 221, the administrator sold the real property under an irregular and void proceeding, and the heir brought ejectment against the grantee to recover the possession. The grantee claimed, as in the Michigan case, that the deed was not absolutely void, that at least it conveyed all the right of the administrator, to-wit: the right of possession, and if the deed was void still the heir could not maintain ejectment for the *right of possession* was in the administrator until the settlement of the estate, and he alone could bring ejectment; but the Court held otherwise, and in delivering the opinion says: "It is claimed that the Statute which gives the executor or administrator the right to the possession of the real estate and the power to receive

the rents and profits thereof, necessarily deprives the heir of such right of possession until such time as the estate is settled or delivered over to him by order of the Court. But we think no such result necessarily follows. As we understand the Statute, it gives the personal representative the power to reduce the real estate to his actual possession, should he think proper, or should the Probate Court direct him to do so, but it does not imperatively require him to take possession thereof, and until he do so the common law rights of the heir to the possession remains unimpaired.

The same court, in *Flood v. Pilgrim*, 32 Wis., 376, in affirming the same doctrine, goes further and gives a construction to the last part of the same section under consideration, to-wit: "And may receive the rents and profits of the real estate *until the estate shall have been settled.*"

One Nedley had died devising his land, the real estate in controversy, to his children. The executor failed to qualify, and no administration was attempted for nearly ten years; the deceased left no personal property, and the heirs took immediate possession of the real property. In an action brought by the administrator to recover possession of the real property for the purposes of administration, the court, referring to the appointment of administrator in such case where there is no personal property to administer, says: "I am strongly inclined to think that such appointment was absolutely null and void. The Statute only confers upon the County Court power to appoint an administrator of *an estate*, and when there is no estate it would seem clear that no such power can exist. * * As a matter of course no administrator or executor can successfully assert the right to the possession of the real estate of a testator or intestate under the Statute if such estate has been settled, and if the right does not exist under the Statute it does not exist at all, for at the common law the executor or administrator had nothing whatever to do with the real estate of which the testator or intestate died seized. This estate had been settled long before letters of administration had been granted the plaintiff. *True*, it had not been settled through the instrumentality of formal proceedings in the County Court, and the Statute does not in terms require that it should be so settled in

The Territory ex rel. Hall v. Bramble, Admr. et al.

order to cut off the right of the administrator to the possession of the land," and concludes by holding that the administrator, in such a case, is not entitled to recover.

Applied to the facts of this case, the decision is very much in point. The jury here find no personal property and the estate has been practically settled for years, not by any "formal proceedings" in the Probate Court, but by the undisturbed use and occupation of the homestead by the widow and heir. If now Bramble as administrator were to bring an action to recover possession of this real property for the purpose of administration, the case would be parallel with the Wisconsin case. Could he recover? Clearly not, for his right to recover depends upon his settlement of the estate, and if there is no estate to settle there is no right to the possession of the real property.

The case of *Flood v. Pilgrim* was reviewed and affirmed in *Filby v. Carrier*—a very late case—45 Wis., 469, and very similar in the statement of facts.

The same doctrines are announced in *Hall's heirs v. Hall*, 4 Ala., 297 ; *Nebraska ex rel v. Keeder*, 5 Neb., 203 ; *King v. Boyd*, 4 Oregon, under the same Statute.

We therefore must conclude that the court erred in admitting evidence to the jury of the value of the homestead under section 640, and in the instructions to the jury; that judgment should not have been entered upon the verdict in favor of the plaintiff, and for these reasons the judgments so entered must be reversed, and it is so

ORDERED.

BARNES, J., concurring.

SHANNON, C. J., dissenting.

MOODY, J., having been of counsel in the District Court took no part in the case.