[No. 553. Decided July 6, 1892.]

HENRY BALCH et al., Appellants, v. ESTHER C. SMITH et al., Respondents.

RECOVERY OF REAL ESTATE—ACTION BY HEIRS—SEIZURE—AMENDMENT OF PLEADINGS.

An allegation in a complaint for the recovery of real property that the ancestor of plaintiffs died seized and possessed of the property is a sufficient allegation of the possession of plaintiffs, as when seizin is once shown, it will be presumed to continue until allegation and proof of adverse possession in someone else.

Under the statutes of this state, as a general rule, the intervention of the probate court and an adjudication and distribution thereunder are essential to passing the title of a decedent to his heirs, and an allegation that several persons plaintiff are heirs-at-law of a decedent is not sufficient to establish the fact they are jointly interested in the property to be recovered, and entitled jointly to maintain an action therefor.

Where a complaint has been amended twice, the refusal of the court to allow a third amendment is not an abuse of discretion, especially when plaintiffs, in their application to amend, do not present with their application the proposed amended pleadings.

*Appeal from Superior Court, Pierce County.*

*Tripp, Town, Likens & Dillon,* for appellants.
*Doolittle & Fogg,* for respondents.

The opinion of the court was delivered by

HOYT, J.—The errors assigned upon this appeal are that the court erred in sustaining the demurrer to the complaint, and in refusing the application of the plaintiffs for leave to file an amended one. The demurrer to the complaint was general, and if for any reason the complaint was bad, it was properly sustained. By their complaint plaintiffs sought to recover possession of certain real estate, and to have their title thereto quieted. It was attacked in the court below, and is here, upon two principal grounds— (1) that the action is barred by the statute of limitations; and, (2) that the capacity of the plaintiffs to maintain the action does not sufficiently appear in the complaint.

The argument of the respondents upon the first proposition is that it nowhere appears from the complaint that the plaintiffs were seized or in possession of the premises within ten years next prior to the commencement of the action. Their contention in that behalf is that under the peculiar wording of our statute it is necessary to allege actual possession of the premises within the statutory period whether or not any other person is shown to have been in adverse possession thereof. The allegations of this complaint show that the ancestor of these plaintiffs died seized and possessed of the premises, but there is no allegation that these plaintiffs or any of them had ever been in possession thereof. Conceding, for the purpose of the dis-

cussion of this question, that the allegation that these plaintiffs were the heirs of such deceased party established their capacity to sue, we think the allegation as to possession was sufficient.    In our opinion our statute of limitations is like that of most of the other states, one of adverse possession, and under it the rightful owner of real estate is seized of the same, whether or not he is in actual possession thereof, unless the same is in the actual adverse possession of some other person.    This being so, it follows that when ownership and seizin is once shown it will be presumed to have continued until such presumption is overcome by allegation and proof of adverse possession in someone else. The fact was sufficiently alleged that the ancestor had been seized of the premises and until something appeared to overcome the presumption of such seizin, it would have force in behalf of such ancestor, or those holding under him.

The next question is one of great importance, and we have given it a somewhat careful consideration.    Does this complaint sufficiently show a capacity on the part of the plaintiffs to maintain this action?    In other words, is the allegation that they are heirs of the person who was seized of the premises, without any other statement to aid such allegation, sufficient to enable them to recover upon the strength of the title which they, as such heirs, may have derived from their ancestor?    It is contended on the part of the respondents that an heir, simply as such, cannot maintain an action for the possession of real estate.    We held in *Dunn v. Peterson, ante,* p. 170, that while an estate was in progress of administration, the heir labored under such disability.    But here a broader question is presented. As we have already stated, there is nothing in this complaint to show either that administration was or was not in progress, or had been had and concluded, or from the circumstances was unnecessary, and we are compelled to de-

cide the simple question as to whether or not under our system for the administration of estates and descent of real property, the heirs under these allegations show themselves entitled to maintain an action against one claiming adversely to their ancestor. It is an entirely new question in this state excepting so far as the case of *Dunn v. Peterson*, above cited, and that of *Hanford v. Davies*, 1 Wash. 476, may throw light thereon, and neither of these cases is decisive of the exact questions presented here. Sec. 956, Code Proc., provides that the administrator may take possession of the real estate of his intestate, and maintain possession thereof with the responsibility of ownership until the same shall have been delivered over by order of the probate court. And it is contended on the part of the respondents, that this shows clearly the intent on the part of the legislature that before the heir gets such title as he can enforce in the courts, the property claimed by him must have been so delivered over. And that the simple fact of his heirship without the aid of such adjudication by the probate court, is not sufficient to authorize him to maintain an action against an adverse holder. Several states have provisions substantially the same as this § 956, and in the case of *Territory, ex. rel. Hall, v. Bramble*, 2 Dak. 208, there is a general discussion as to the proper construction to be given thereto, and cases are therein cited from Michigan and other states, which establish a rule of construction of language similar to that used in said section. In nearly all of the states having such provisions it has been held that administration is not indispensable to the descent to the heir of a perfect title, with all the rights incident thereto. The argument of the courts in that regard seems to be that the language does not make it the absolute duty of the administrator to take possession of the real estate, but simply gives him permission so to do. And it is held for that

reason that such administrator is clothed with the discretion in any case to determine whether or not it is necessary and proper that he should take possession of the real estate. These cases are entitled to much weight, as they are from courts of high standing. Even with this construction it might be necessary for an heir seeking to enforce rights independent of administration to negative in the allegations of his complaint the exercise of this right of possession by the administrator. But we should feel constrained to hold with these decisions were this § 956 the only provision of our statute relating to this subject. The cases of which we have been speaking seem to have gone off entirely upon the language of the section of the statutes of the respective states corresponding to our § 956, and if they had other provisions similar to the succeeding sections of our probate practice act, to which we shall now call attention, such fact seems to have escaped the attention of the courts, and we assume that these further provisions of our statute were not contained in those under discussion when those cases were decided. Our § 956, as we have already seen, simply gives the administrator permission to take possession of the real estate, at least it uses the word "may" instead of the word "shall," and in the light of the cases above referred to, we should construe such language as they have done were it not for such further provisions of our law. Sec. 1041, Code Proc., is as follows:

"The executor or administrator shall take into his possession all the estate of the deceased, real and personal, and collect all debts due to the deceased."

By the provisions of § 1042 actions for the recovery of any property, real or personal, or the possession thereof, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates. Sec. 1043 provides that executors and adminis-

trators may maintain actions against any person who shall have wasted goods of the testator or intestate, and may also maintain actions for trespass committed on the estate of the deceased during his lifetime. Sec. 1044 provides that actions may be maintained for waste or trespass against the administrator. In view of all these provisions it seems to us clear that our legislature intended to do more than to give the administrator permission to take possession of the real estate of the deceased. If intent can be made clear by language, then the intent of the legislature that the administrator should take entire charge of the estate of the deceased is made clear by the provisions of our statute above referred to, and the other provisions of a similar nature contained in the probate practice act. It follows from this construction of our statute that an heir cannot get the right to the possession of real estate as against the administrator, at least, until his share of the estate has been delivered over by order of the probate court. And we are further of the opinion that the provisions of chap. 12 of the Code of Procedure, as to partition and distribution of estates, show a clear intent on the part of our legislature that title, and the rights incident thereto, should only regularly pass from the ancestor to the heir by virtue of the provisions of said chapter. Sec. 1095, contained in said chapter, provides that the decree (that is, the decree of distribution) shall name the person and the portion or part to which each shall be entitled. Sec. 1097 provides how the estate, real or personal, assigned to two or more heirs, devisees or legatees, may be partitioned among them. Sec. 1099 provides the manner of, and notice necessary, before distribution shall be made. Sec. 1100 provides that the distribution shall be made just the same even although some of the heirs may have assigned their share of the estate. Sec. 1101 provides that the several shares of the real and personal estate shall be

set out to each individual in proportion to his right, unless two or more of the parties shall consent to have their shares set off so as to be held by them in common and undivided. There are numerous other sections in said chapter all bearing upon this question, and pointing out with much detail the manner in which all the property of estates, as well real as personal, shall be partitioned, distributed and set over by order of the probate court in severalty to those entitled thereto. In our opinion it follows from all these provisions that the ordinary and usual way in which the title of the ancestor descends to the heir in such a shape as to make it available to him is by a decree of distribution. And that, as a general rule, the allegation that several persons plaintiff are the heirs-at-law of the ancestor is not sufficient to establish the fact, even *prima facie*, that as such heirs they are jointly interested in the property to be recovered, and entitled jointly to maintain an action therefor. The general and ordinary rule would be that each heir would receive by the adjudication of the probate court a certain specific part of the estate of his ancestor, and he alone would be interested in and entitled to maintain an action therefor. In other words, as a general proposition, force and effect can only be given to our statutes by holding that the intervention of the probate court and an adjudication and distribution thereunder are essential to the passing of the title of the ancestor to the heir so perfected as to make it beneficial to him. This, we say, is the general rule. It is probable, however, that special circumstances may be alleged and proven which will entitle the heirs of a deceased person to jointly enforce their title to the lands of their ancestor. Such facts may have existed as to make administration unnecessary, or administration may have been had and closed, and certain property of the estate not included therein, or other special circumstances may exist which would show that adminis-

tration would be absolutely unnecessary, and that no good purpose could be subserved by requiring it. These cases, however, would constitute exceptions to the general rule, and whenever heirs-at-law jointly seek to enforce any rights as such heirs against those claiming title to the land of their ancestor adversely to him, they must allege and prove such special circumstances as will bring them within some of the exceptions to the rule above announced. As we have seen, the complaint in this case contained no allegations to place these heirs and the claims which they sought to enforce within any of these exceptions, and the complaint was, therefore, bad.

As to the action of the court in refusing plaintiffs leave to amend: As a general rule courts will not refuse a party leave to amend a pleading so long as it is satisfied that he is in good faith attempting to remedy such defects in his pleading as are made to appear by the rulings of the court upon questions presented to it during the progress of the settling of the pleadings. This general rule, however, has never gone so far as to establish an absolute right on the part of the pleader to amend as often as he saw fit, regardless of the question of the opinion of the court as to his good faith in the matter. The court is clothed with large discretion in determining whether or not justice will be subserved by allowing a defective pleading to be amended. In the case at bar the complaint to which the demurrer in controversy was sustained was the third complaint filed by the plaintiffs in the action. Two amended pleadings had been filed and yet the complaint, in the opinion of that court, and this, was still defective. Under these circumstances it is impossible for us to say here that the court abused its discretion in refusing to allow further amendments. Especially is this true when the plaintiffs, in their application to amend, did not present with their application the proposed amended pleading. If they had done this, so

that the court could have seen that giving them leave to
amend once more would have resulted in a pleading upon
which a trial upon the merits could have been had, there
would have been much stronger reason for holding that, in
refusing to allow them to try once more, it had been guilty
of an abuse of discretion.  We see no reversible error in
the action of the court in this regard.  We have discussed
this latter question in the light of a practice which seems
to have grown up in the courts of this state to give leave
to amend pleadings without the presentation with the appli-
cation to amend of a copy of the proposed amendment.
We do not wish, however, to be understood that we should
in any cause reverse the action of the court below in refus-
ing an amendment, unless with the application therefor a
copy of the proposed amendment was submitted.  We are
inclined to think that a party who desires to seek in this
court a review of the discretion of the lower court upon
this question of amendment, should show by tending his
proposed amended pleading whether or not the leave, if
granted to him, would have been of avail.  The party de-
siring to rely strictly upon his rights to amend, should, we
think, comply with the provisions of § 221 of the Code of
Procedure.

It was suggested upon the argument by appellants that
the demurrer was sustained by the court below, because it
thought the facts set up in the complaint showed that the
action was barred by the statute of limitation, and that it
would be unjust, if this court should hold the complaint
bad for any other reason, to deprive them of the right to
amend.  But it is sufficient answer to this suggestion to
say that the demurrer was general, stating two reasons
therefor,· and that if the complaint was bad for either
reason, the demurrer was properly sustained, and there is
nothing in the order of the court to show upon which
branch of the demurrer the court sustained the same.

We find no error in the record, and the judgment must be affirmed.

ANDERS, C. J., and DUNBAR, STILES and SCOTT, JJ., concur.