[No. 4405.   Decided October 27, 1903.]

ORLANDO DEMARIS, *Respondent*, v. OLIVER P. BARKER,
*as Executor, etc., et al., Appellants.*[1]

COURTS—JUDGMENT—JURISDICTION—DECISION IN NINETY DAYS.
The failure of a judge to decide a case within ninety days from
its submission, as required by const., art. 4, § 20, does not render
the judgment void for want of jurisdiction.

COURTS—VISITING JUDGES—POWERS OF.   The visiting judge has
the same powers as the regularly elected judge of the county.

DESCENT—DISTRIBUTION—DEEDS BY HEIRS—PENDING ADMINIS-
TRATION—TITLE VESTS WHEN—DEMURRER.   A title founded upon
deeds of the heirs prior to the law of 1895, made pending admin-
istration of the estate, is sufficient, as against general demurrer,
in view of Bal. Code, § 6361, recognizing conveyances by heirs
prior to distribution, and Laws 1895, providing that the title to
real estate shall vest in the heirs immediately upon the death of
the ancestor, and expressly extending the rule to the transmission
of all such previous titles, which were thereby confirmed.

EXECUTORS—SALES—ACTION TO ENJOIN SALE TO PAY DEBTS—
COMPLAINT—SUFFICIENCY—ADMISSIONS.   An admission that the
land of an estate was sought to be sold for the purpose of paying
the debts of the estate, does not render a complaint to enjoin the
sale demurrable, when it alleges facts showing that the land in
question was only secondarily liable, if at all, and that the sale
thereof would be inequitable.

SAME—EFFECT OF ORDER OF SALE—FRAUD.   A complaint to en-
join the sale of lands to pay the debts of the estate is not demur-
rable because it appears to be pursuant to an order of the probate
court, where it alleges that the order was procured through con-
spiracy and fraud, and without notice to plaintiff until after the
sale was advertised.

APPEAL—REVIEW—STATEMENT OF FACTS—CERTIFICATE.   Where
a statement of facts recites that after the taking of testimony
before a referee, the case came to a trial, at which both sides "in-
troduced certain evidence," which is not set forth in the state-
ment, a certificate that the statement "together with the evidence
therein referred to" contains all the material facts, does not show

[1]Reported in 74 Pac. 362.

that the record contains all the evidence, and is insufficient to warrant a review upon a trial *de novo*.

SAME—DEPOSITIONS—WRITTEN EVIDENCE—CERTIFICATE BY CLERK. Depositions, copies of records, and such testimony as is not returned with the referee's report, so as to form a part of the record, must be brought up by a statement of facts, settled by the judge, and can not come up over the certificate of the clerk.

Appeal from a judgment of the superior court for Walla Walla county, Chadwick, J., entered February 6, 1902, upon findings in favor of plaintiff after a trial on the merits before the court without a jury, perpetually restraining the sale of lands of an estate to pay debts. Affirmed.

*C. B. & Wm. H. Upton* and *Gillis & Reynolds,* for appellants, contended, *inter alia,* that·at the time the deed was made the heirs had no title to convey. *Balch v. Smith,* 4 Wash. 497, 30 Pac. 648; *Dunn v. Peterson,* 4 Wash. 170, 29 Pac. 998; *Hill v. Young,* 7 Wash. 33, 34 Pac. 144; *Tucker v. Brown,* 9 Wash. 357, 37 Pac. 456. And the right of the executor became a vested right which could not be defeated by a subsequent act of the legislature. *State ex rel. Phinney v. Superior Court,* 21 Wash. 186, 57 Pac. 337; *Christofferson v. Pfennig,* 16 Wash. 491, 48 Pac. 264.

*W. T. Dovell* and *Lester S. Wilson,* for respondents.

PER CURIAM.—The respondent brought this action to enjoin the appellants from selling, or causing to be sold, as property of the estate of Sarena Barker, deceased, certain real property situated in Walla Walla county, and to quiet his title to the same. The respondent was successful in the court below, and this appeal is from the decree entered in his favor.

As a preliminary question, the appellants urge that the trial judge was without jurisdiction to render a judgment

in this cause at the time he rendered the judgment appealed from, for the reason that more than ninety days had elapsed since he had taken the cause under advisement, and no rehearing had been had or ordered in the meantime. This contention is founded upon § 20 of art. 4 of the state constitution, which reads as follows:

"Every case submitted to a judge of a superior court for his decision shall be decided by him within ninety days from the submission thereof: Provided, That if within said period of ninety days a rehearing shall have been ordered, then the period within which he is to decide shall commence at the time the cause is submitted upon such a rehearing."

As another section of the constitution declares all of its provisions to be mandatory unless by express words they are declared to be otherwise, it is argued that this provision, being mandatory, can have no force or effect if it is not held that delay beyond the period fixed deprives the court of jurisdiction to render a decision.

It seems to us, however, that such a construction of the section would be directly subversive of its purpose. Manifestly, the purpose of the provision was to secure a speedy determination of causes submitted to the court for decision. "The law's delays" is not a modern phrase. Judges of the old time were not wholly unlike some of their successors in office. They, too, were inclined to waver between two opinions, fearful to pronounce the one lest the other should be deemed the more powerful, and delays caused thereby have at all times been more or less prevalent, and have always been regarded as something of an unmixed evil when viewed from the standpoint of a litigant or the public.

It was to furnish a remedy for this that this clause of the constitution was adopted. It was thought that judges,

who derived their authority from that instrument, would obey its behests, or, if they did not, that some means would be found to coerce obedience; or, indeed, it may have been thought that disobedience would be ground for an impeachment; but certainly it was never thought that the remedy was to be found in the holding that the judgment afterwards rendered is nugatory. To give it this construction is to prolong the very evil it was sought to avoid, and to punish the very persons whom it was intended should be its beneficiaries. If the judgment when rendered is to be declared void, then the litigants, who have already been subjected to an unconstitutional delay, must again be subjected to the additional delays necessary to again bring the cause to the condition it was before the court violated its sworn duty. They must also pay the accruing costs necessary for that purpose. Were the delay something within the control of the litigant, were it caused by his own dereliction, the conclusion contended for might be tolerated. But the litigant cannot control the action of the court after he has submitted his cause for its decision. From that time on it rests within the will of the judge, and the law provides no means by which a litigant can coerce him into action, until, at least, the limit of time has expired which is here thought to render action nugatory. To punish the litigant for the wrongs of the court which he has no power to prevent, is not, we repeat, the purpose of this constitutional provision, and to so hold would be subversive of its intent.

But this cause was decided by a judge called in from another county, and it is thought that this fact makes some difference in the rule.. We think otherwise. The visiting judge, when regularly called, is just as much judge of the court where he is sitting as is the regularly elected

judge of that court, and his powers and responsibilities in the matters he is called in to hear are not less nor greater than are those of the regularly elected judge.

Passing to the assignments of error based upon the rulings of the trial court, it is first urged that the court erred in overruling the appellants' general demurrer to the amended complaint. Four reasons are urged in support of this assignment, the first of which is that it appears on the face of the amended complaint that the respondent has no title to nor interest in the property which he seeks to restrain the appellants from selling and to quiet in himself.

From the allegations of the complaint it appears, that the land in controversy was formerly a part of the estate of Sarena Barker, deceased; that the executor of that estate, after proof of the will of the deceased and the issuance of letters testamentary, and while the estate was in process of administration, joined with the heirs and devisees, who were all adults, in deeds one to the other by which they sought to partition the estate between them. The respondent claims title through one of these deeds, which was made on the 26th day of June, 1890; that is, a deed made prior to the time the statute vesting in heirs and devisees title to the estates of deceased persons immediately on the death of such persons went into effect.

The argument of the appellants is that under the rule of *Balch v. Smith,* 4 Wash. 497, 30 Pac. 648, the heirs at that time had no title to the real property of the estate, and hence their deed could pass no title to the purchaser, and that the executor's deed passed no title, because he could only convey through an order of the probate court, obtained after a showing of necessity, and no such order was obtained. It may be conceded, we think, that the

contention of the appellants with reference to the deed of the executor as executor is correct, inasmuch as it is not shown that the will authorized the settlement of the estate without the intervention of the probate court, and no order was obtained directing him to sell the property; for, without the will authorizes it, a deed of an executor of real property of an estate, where the same is not authorized by the court having probate jurisdiction, will pass no title to the purchaser.

The question, then, is, did the heirs have such an interest in the lands of the estate that their deed thereto, pending administration, passed title to the purchaser? In *Balch v. Smith,* 4 Wash. 497, 30 Pac. 648, this court said that, as a general rule, "the intervention of the probate court and an adjudication and distribution thereunder are essential to the passing of the title of the ancestor to the heir so perfected as to make it beneficial to him." This was said in a case where the plaintiffs sought to recover the possession of real property, in an action in which their allegation of title was that their ancestor had died seized of the premises; the court holding that it did not follow from this allegation, in view of the probate statutes, that they were entitled to possession.

But it is evident that the court did not intend to announce the broad doctrine that an heir had no interest in the real estate of his ancestor which he could convey to another by his deed of the same, prior to a decree of distribution made by a probate court. Such a conclusion would have been contrary both to the statute which it was purporting to construe and to a previous decision of the court. The statute relating to partition and distribution of estates then in force provided specifically that, when the heirs of an estate had conveyed their interests in the same

prior to distribution, the portion, to which they would otherwise have been entitled should be set aside to the purchasers. Bal. Code, § 6361. Surely, if it were the purpose of the legislature to withhold title from the heir pending the administration of the estate, it would not have provided for a recognition of a conveyance of that title by the heir.

So, in *Hanford v. Davies,* 1 Wash. 476, 25 Pac. 329, decided, as we say, prior to *Balch v. Smith,* it was assumed by the court that the heir took title immediately on the death of the ancestor, and the argument upon the questions involved proceeded upon that theory. Since *Balch v. Smith,* the rule that the heir takes title immediately has been several times recognized. In *Hill v. Young,* 7 Wash. 33, 34 Pac. 144, it was held that an heir whose ancestor died in 1883 could, in 1891, claim complete title to land inherited from the ancestor, although there had been no administration of the estate; the court saying that it so decided "in full view of *Balch v. Smith.*" In *Tucker v. Brown,* 9 Wash. 357, 37 Pac. 456, it was held that a complaint by an heir, which alleged that no administration was pending, and that there was no necessity for one, showed such title in the heir as to enable him to maintain an action to recover lands inherited from his ancestor. In *Christofferson v. Pfennig,* 16 Wash. 491, 48 Pac. 264—an action to quiet title—the question was whether title derived under a will passed to the devisee prior to an administration of the estate. Speaking to this point, the court said:

"One of the questions to be determined is whether or not the title to one-half of the lands vested in the husband under this provision of the will. The lower court refused to find that such title vested in said Hans Roholt, and made no finding on that subject, and exception was duly taken.

The respondent contends that no title vested in Hans Roholt under the decision in *Balch v. Smith*, 4 Wash. 497, 30 Pac. 648. While this case has never been formally overruled, and while it may have been cited in opinions subsequently rendered, in excepting cases therefrom, no case has arisen since where it has been given the effect contended for by the respondent here, and a different rule has since been established by the legislature (Laws 1895, p. 197), but that act does not affect this case. We are not disposed to follow the case of *Balch v. Smith* to the extent of giving it the effect contended for by the respondent, for we are of the opinion that the title to one-half of said lands vested in the husband, subject to the trust imposed by the will, even though it did not take effect for all purposes until the will was probated."

These cases are clearly contrary to the expression in *Balch v. Smith* above quoted, as they can be upheld on no other theory than that title passes from an ancestor to an heir without the intervention of the probate court. Being subsequent to that case, and contradictory of it, they ought to be allowed to control on this particular question. It must be remembered, also, that since the decision in the *Balch* case the statute has set the question at rest, in so far as it was within the power of the legislature to do so. The act of 1895, p. 197, declares that when a person dies seized of lands, tenements, or hereditaments his title thereto shall vest immediately in his heirs or devisees, subject to such charges as such land is liable to under existing laws; further declaring that "this act shall apply to and govern the transmission of title of . . . persons already deceased, whether letters testamentary or of administration have been granted on such estates or not, and the title of all heirs and devisees, and their grantees, to any such real property is hereby confirmed and made valid to the same extent as if this act had been passed before the death

of such decedent." Under any view of the law, therefore, it seems to us that the allegations of title contained in the complaint are sufficient to sustain it against a general demurrer.

The second and third objections raise substantially the same point. The objection is that it appears on the face of the complaint that the debts of the estate have not been paid, and that the very sale the respondent seeks to enjoin was to be made for the purpose of paying such debts. It is true the complaint does allege that there are debts of the estate unpaid, and that this land was ought to be sold for the purpose of paying those debts; but it goes much further than this. It sets out a state of facts from which it is made to appear that the lands in question are only secondarily, if at all, liable for those debts, and that it would be unjust and inequitable to permit the land to be sold for the purpose of satisfying them. If these allegations are true—and for the purposes of demurrer they must be taken as true—they overcome the statements of fact relied upon by the appellants, and show that, in spite of those facts, the land should not be sold. The court must look to the complaint as a whole to determine the question whether or not it states a cause of action. Admissions and statements which, standing alone, might seem to negative the right to the relief sought, may be explained by other allegations of the complaint, and so overcome them as to show that, in spite of them, the relief sought should be granted; and such is the case here.

The fourth ground is that it appears on the face of the complaint that the sale sought to be enjoined was being had pursuant to an order of the probate court directing it. And it is argued that the respondent had the right to present to the probate court, in opposition to the order of sale,

all of the matters which he now alleges for the purpose of enjoining it, and, having failed so to do, is precluded by the order, which in effect is a judgment finding the sale proper aßd necessary.

But the respondent alleges that the order was obtained through conspiracy and fraud, and that he had no notice thereof until after the same had been made, and his property advertised for sale. While applications for relief in equity against judgments at law are at all times viewed with the closest scrutiny, and will not be granted except upon the clearest and strongest reasons, yet courts have not hesitated to grant such relief where the judgment sought to be set aside has been obtained through fraud, deceit, accident, surprise, or some adventitious circumstances beyond the control of the judgment debtor. 16 Am. & Eng. Enc. Law (2d ed.), 374, 375. The allegations of the complaint here clearly bring the pleader within the rule, even though it be conceded that the order of sale is a judgment in the sense contended for by the appellants— a contention with which the respondent does not agree, and which we have found it unnecessary to decide.

Moreover, the respondent has, by a supplemental complaint, shown that a large part of the debt for which the land was ordered sold has been paid subsequent to the order of sale, and has pleaded other facts tending to show that a sale for the balance would be now highly inequitable. While these facts might properly have been brought to the attention of the court in the probate proceeding, as a reason for recalling its order of sale, still, they are properly to be considered in connection with allegations of fact of purely equitable cognizance which could not be there heard, and may be considered in aid of such allegations. The complaint is not faulty, therefore, for any of the rea-

14-33 WASH.

sons assigned, and the demurrer was properly overruled.

The next question urged is that the findings of fact are not supported by the evidence. The respondent contends that this question is not before us, because the appellants have not brought the evidence in the case here for review; and this contention, we think, must be sustained. The record, as brought here, consists of a transcript of the pleadings, the judgment, and the orders and journal entries made in the case, together with copies of certain evidence purported to have been taken before a referee, a copy of a deposition, and copies of certain probate records; all of which appear over the certificate of the clerk to the effect that the same are true and correct copies of so much of the record as he has been requested by the appellants' attorneys, and is by law required, to transmit to the supreme court. This is followed by what is denominated a statement of facts, which, omitting the title and certificate is as follows:

"This action (and another one against the same defendants wherein Emery E. Hoskins was plaintiff, practically identical in character, except that different lands were involved) was begun in the above entitled court in 1896. The complaints were filed October 10, 1896, in both actions; and, in the Hoskins case a temporary restraining order, restraining the executor, Barker, from selling lands claimed by plaintiff, issued on the same day. All the defendants entered their appearance in each action, November 6, 1896.

"Subsequently, on February 1, 1897, the plaintiffs, by leave of court, filed and served amended complaints in each case, which are shown in the respective records. Issue was joined in each case by all of the defendants, and it was then stipulated that the two cases should be tried together; that evidence should be taken before H. S. Jackson, as referee, and that said evidence, and any other that

might be admitted, be treated and considered as given in both actions.

"On behalf of plaintiffs certain evidence was taken before said Jackson, as shown in the record, as well as the deposition of Harry Krutz; and, on August 28, 1901, both of said causes came on for trial before Hon. S. J. Chadwick, superior judge, presiding, at which time plaintiff, by leave of court, filed a supplemental complaint in each case, and, after the defendants had answered the same, introduced evidence in support of the allegations thereof. After plaintiffs had rested the defendants filed in each case a motion for a nonsuit, and, upon said motions being denied, introduced certain evidence in each case and rested. Thereupon, after argument by counsel, the court, on the day last mentioned, took both cases under advisement.

"On January 7, 1902, the court filed in each case findings of fact and conclusions of law which, on exceptions by defendants, were in certain respects modified by orders filed February 6, 1902, and final decrees were entered in both cases February 6, 1902."

The certificate of the trial judge is to the effect that the statement, "together with the evidence therein referred to," contains all of the material facts of the case. From this it will be observed that it is impossible for this court to know whether or not the evidence on which the case was tried in the court below is before us. We have here, over the certificate of the clerk, copies of certain testimony taken before a referee, a copy of a deposition, and copies of some probate entries, and, over the certificate of the judge, a recital that both parties to the action introduced evidence; but whether the copies certified to by the clerk form a part, or the whole, of the evidence referred to in such certificate, the record is silent. This is insufficient to warrant this court in trying the action *de novo*. Before the court can do that, it must appear that the record con-

tains all of the evidence on which the cause was tried in the court below.    Such of it as is not returned with the report of the referee, so as to form a part of the record, under § 5064 of the Code, must be contained in a statement of facts, settled and certified by the judge before whom the cause is pending or was tried.    It cannot come here over the certificate of the clerk.

As the evidence is not before us, we cannot review the findings of fact, and, as it is not questioned that these, as found, support the judgment, it follows that the judgment must stand affirmed, and it is so ordered.