*Decision will be entered under Rule 155.*

ESTATE OF EDWIN L. BOND, DECEASED, RUTH B. BOND, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1250–93.                    Filed May 30, 1995.

*Michael A. Patterson* and Paul Baummett (specially recognized), for petitioner.

*John M. Altman, Michelle K. Loesch,* and *Robert F. Geraghty,* for respondent.

SCOTT, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Edwin L. Bond in the amount of $440,326.

On April 20, 1994, petitioner, the Estate of Edwin L. Bond, Deceased, Ruth B. Bond, Personal Representative, filed a motion for summary judgment alleging that the Court should

conclude, based on the will of Edwin L. Bond, decedent, that all of decedent's residual estate was left unconditionally to his wife and, therefore, was a part of the marital deduction. This motion was taken under advisement by the Court, and the case was heard on the merits.

One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for decision whether decedent's bequest of his residual estate to his wife, subject to her surviving distribution or surviving distribution of her share of the remainder of his estate, was a bequest of a terminable interest under section 2056(b)(1)[1] for which no marital deduction is allowable. If we hold that the provisions of the will created to any extent a terminable interest, we must decide whether the value of the real property that passed to decedent's spouse as part of the residual estate is allowable as a marital deduction because of the provisions of the laws of the State of Washington with respect to when title to real property vests in a devisee.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Edwin L. Bond (decedent) died on October 1, 1988. Decedent's wife, Ruth B. Bond (Mrs. Bond), who resided in Seattle, Washington, at the time of the filing of the petition in this case, was appointed personal representative of decedent's estate. Decedent was domiciled in Seattle, Washington, at the time of his death. A Federal estate tax return for decedent's estate was filed with the Internal Revenue Service Center in Seattle on December 29, 1989.

Decedent and Mrs. Bond were married in 1984. Decedent was survived by Mrs. Bond and his and Mrs. Bond's son Jonathan Bond. Decedent had two children by a prior marriage, Gregory M. Bond (Gregory Bond) and Benjamin R. Bond (Benjamin Bond). Jonathan Bond was the only child of the marriage between decedent and Mrs. Bond.

Decedent's sons, Gregory Bond and Benjamin Bond, were killed with decedent in an airplane accident on October 1,

---

[1] All section references are to the Internal Revenue Code as in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

1988. Jonathan Bond was 17 months old at the time of decedent's death.

At the time of his death, decedent was operating a construction business as a sole proprietorship, and over 90 percent of the value of his estate was in real property. Decedent personally managed the real properties he owned. Mrs. Bond was not employed outside the family home at the time of decedent's death and was dependent on decedent for her support.

Sometime in 1987, decedent and Mrs. Bond engaged Dudley Panchot (Mr. Panchot), an attorney licensed to practice law in the State of Washington, to draft wills for them. Decedent and Mrs. Bond together met with Mr. Panchot to discuss the provisions of their wills. After the conclusion of his meeting with decedent and Mrs. Bond, Mr. Panchot dictated a memorandum of instructions addressed to a legal assistant with respect to the provisions to be included in the drafts of the will of decedent and of the will of Mrs. Bond. After the wills were drafted Mr. Panchot made certain changes in the drafts of the wills. One of the changes Mr. Panchot made in the will of decedent was in the wording in Article IV, paragraph 4.2 with respect to the phrase "survive distribution of her share of the remainder of my estate".

Article II, paragraph 2.1 of decedent's will designated his wife, Ruth B. Bond, as personal representative of his will to serve without bond and with unrestricted nonintervention powers. Article IV, paragraph 4.1 of decedent's will bequeathed to his wife any interest he had in property title to which was in her name alone, any interest he had in automobiles, and any interest he had in the property constituting the family home, together with all of his interest in the household furniture, furnishings, and personal effects located therein. Paragraph 4.1 further provided that if decedent's wife was no longer living at the time of decedent's death, all of the foregoing bequests should pass to a contingent trust for their son Jonathan.

Article IV, paragraph 4.2 of decedent's will stated in part as follows—

the residue of my estate shall pass to my wife, RUTH B. BOND, provided that she *survives distribution.* In the event that RUTH fails to *survive distribution of her share of the remainder of my estate,* then I direct that

RUTH's share shall pass into the trust created primarily for our son JONATHAN * * * as is fully set forth in Article VI below. [Emphasis added.]

Article VI, paragraph 6.1 of decedent's will provided in part as follows—

*Contingent Trust for Jonathan and Children of Marriage of Edwin and Ruth.* In the event that my wife, RUTH B. BOND, is no longer living at the time of my death, but I am survived by my son JONATHAN and/or any other children born to or adopted by RUTH and me * * * then I leave that portion of my estate specifically set forth in paragraphs 4.1 and 4.2 above, in trust, to my sister-in-law, LORNA BLUM ZWILLENBERG, as trustee * * *.

The pages of decedent's will which contained these clauses were initialed and dated by decedent.

Decedent's estate claimed $1,446,387 as a marital deduction on the estate tax return filed for decedent's estate.

In the notice of deficiency issued to decedent's estate, respondent disallowed $1,139,735 of the claimed marital deduction on the basis that the bequest to Mrs. Bond of decedent's residual estate was a bequest of a terminable interest, and, therefore, the value of the assets of decedent's residual estate was not part of the marital deduction. Respondent allowed a marital deduction of $306,652 to decedent's estate for joint tenancy property which passed to Mrs. Bond on decedent's death by operation of law.

Petitioner's position is that decedent's will was ambiguous as to decedent's intent with respect to the bequest of his residual estate to Mrs. Bond. For this reason, petitioner contends that the Court should consider evidence other than the provisions of the will to determine decedent's intent with respect to the property interest bequest of Mrs. Bond. Petitioner contends that it was decedent's intent that the words "survive distribution" mean "survive my death". Respondent contends that the will is unambiguous in the provision granting a terminable interest to Mrs. Bond.

## OPINION

Section 2056(a) provides, with certain limitations, that in computing the value of the estate subject to estate tax a deduction from the gross estate is allowed of an amount equal to the value of any interest in property which passes

or has passed from the decedent to the surviving spouse. Under section 2056(b)(1),[2] an interest passing to the surviving spouse which will fail or lapse under certain conditions constitutes a terminable interest, the value of which is not deductible by the decedent's estate. Section 2056(b)(1) was enacted to prevent the avoidance of estate tax by a decedent leaving property to his spouse that would not vest in her so as to be included in her estate, but would be part of the marital deduction in his estate, thus escaping tax in either estate. *Allen v. United States,* 359 F.2d 151, 154 (2d Cir. 1966). In *Estate of Heim v. Commissioner,* 914 F.2d 1322, 1326–1327 (9th Cir. 1990), affg. T.C. Memo. 1988–433, the court, after discussing the reasons for the terminable interest provision, stated—

> As set forth in the statute, a terminable interest exists if three conditions are met. First, the interest must be one that will lapse or terminate upon the occurrence or nonoccurrence of an event, or upon lapse of time; second, upon the failure of the interest of the surviving spouse, the interest in property must be one that will pass from the decedent to someone other than the surviving spouse for less than adequate and full consideration; and third, the person to whom the property passes must be able to enjoy or possess the property after failure of the interest of the surviving spouse. With certain exceptions not relevant here, an interest bequeathed to a surviving spouse will qualify for the marital deduction unless all three of these conditions have been met. *Allen,* 359 F.2d at 154.

Whether an interest is terminable is to be ascertained at the moment of a decedent's death, regardless of subsequent events. *Allen v. United States, supra* at 154. Therefore, even though the statute provides for an exception to the terminable interest rule when the contingency will expire

---

[2] Sec. 2056(b)(1) provides:

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

within 6 months, we have held that if the interest passing to the spouse is conditioned on a final decree of distribution of the estate, that interest is terminable even if actual distribution is made within 6 months after the decedent's death, unless State law requires distribution within 6 months. *Estate of Harmon v. Commissioner,* 84 T.C. 329, 339–340 (1985); *Estate of Sbicca v. Commissioner,* 35 T.C. 96, 100–103 (1960); *Estate of Street v. Commissioner,* 25 T.C. 673, 674–676 (1955). Washington does not require distribution of an estate within 6 months.

The nature of a legal interest in property is a matter of State law, and, therefore in the instant case, the law of the State of Washington determines the interest Mrs. Bond received under decedent's will. The decisions of the Supreme Court of Washington are conclusive as to that State's law, but we give "proper regard" to relevant rulings of the lower State courts.[3] *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465 (1967).

Petitioner first argues that Wash. Rev. Code Ann. section 11.108.060 (West 1987) reforms decedent's will so that petitioner is eligible for the marital deduction. In the alternative, petitioner contends that, despite the language contained in the reference in Article IV of decedent's will, Article VI's reference to the death of decedent's spouse makes the will sufficiently ambiguous to allow extrinsic evidence to prove decedent's intent.

Wash. Rev. Code Ann. section 11.108.060 provides in part as follows—

If a governing instrument contains a marital deduction gift, whether outright or in trust and whether there is a specific reference to this section, any survivorship requirement expressed in the governing instrument in excess of six months does not apply to property passing under a marital deduction, and in addition, is limited to a six-month period beginning with the testator's death.

---

[3] On Jan. 8, 1993, Commissioner Maurice M. Epstein of the Washington Superior Court of King County signed and entered findings of fact and conclusions of law with respect to petitioner's petition for interpretation of decedent's last will and testament. This proceeding in a lower level court was nonadversarial. The Washington lower court ruled that affidavits could be used to show decedent's intent to provide for the marital deduction. Unlike that court, we find no ambiguity in the will that would warrant such use of the affidavits. See *Estate of Heim v. Commissioner,* 914 F.2d 1322 (9th Cir. 1990), affg. T.C. Memo. 1988–433. Hence, we afford these findings and conclusions little weight.

While there are no cases decided by the Supreme Court of Washington with regard to the meaning of this statute, the Court of Appeals for the Ninth Circuit, the court to which this case is appealable, has addressed this issue with regard to a substantially identical statute in California. In *Estate of Heim v. Commissioner, supra* at 1328–1330, the Court of Appeals held that the California statute did not operate to reform the provision of the will.[4] The court found no evidence that the testator intended the gift to his spouse to qualify for the marital deduction. The court noted that the will on its face did not mention the marital deduction. *Id.* at 1330. In the present case, similarly, the will does not mention the marital deduction. We conclude that the Washington statute does not operate to reform decedent's will.

Under Washington law, the testator's intent is paramount in construing the provisions of a will, and must, if possible, be gathered from the four corners of the will when read as a whole. Wash. Rev. Code. Ann. sec. 11.12.230 (West 1987); *In re Estate of Douglas,* 398 P.2d 7, 10 (Wash. 1965). Where an estate is given in one part of a will in clear and decisive terms, it will not be taken away or cut down by doubtful language in a subsequent clause. *In re Estate of Douglas, supra.* The court in construing a will must look to the facts as they existed when the will was drawn. The court must not make a new will for the testator or warp the testator's language in order to obtain a result that the Court may feel to be just. *In re Estate of Price,* 454 P.2d 411, 412 (Wash. 1969); *In re Estate of Quick,* 206 P.2d 489, 496–497 (Wash. 1949). There is no room for construction if the will is clear and unambiguous, and the meaning thereof must be given full force and effect. *In re Estate of Williamson,* 229 P.2d 312, 315 (Wash. 1951).

It is therefore necessary for us to determine under Washington law the meaning of the words "survive distribution" or "survive distribution of her share of the remainder of the estate". In *Kasper v. Kellar,* 217 F.2d 744, 747 (8th

---

[4] Cal. Prob. Code sec. 1036 provided as follows:

If a will contains a marital deduction gift, whether outright or in trust and whether or not there is a specific reference to this article, any survivorship requirement expressed in the will in excess of six months shall not apply to the property passing under a marital deduction, but shall be limited to a six-month period beginning with the testator's death.

In 1987, this section of the Probate Code was replaced with Cal. Prob. Code Ann. sec. 21525. However, sec. 1036 was the section that was in issue in *Estate of Heim v. Commissioner, supra.*

Cir. 1954), the court discussed the meaning of words in a will bequeathing to decedent's wife a certain portion of his estate, if she was "living at the time of the distribution of my estate." The court pointed out that the South Dakota law was controlling in the case under consideration, and the court had found no South Dakota cases. The court, however, stated that there were cases in other jurisdictions that had interpreted words such as "time of the distribution" of property and similar words to be equivalent to the date of decedent's death, and that these cases held that "distribution" as used in such a context related to the time of a decedent's death. However, the court stated that there were a number of jurisdictions which accorded a literal technical meaning to the words "at the time of the distribution of my estate" and held that effectively this meant at the time of the entry of a decree of distribution. The Court of Appeals for the Eighth Circuit remanded the case to the lower court with directions that the lower court determine the meaning of the words used in the will under South Dakota law.

Other cases have interpreted various statements which were not precisely the same as the statement considered in *Kasper v. Kellar, supra.* In *Bookwalter v. Lamar,* 323 F.2d 664 (8th Cir. 1963), the court interpreted the phrase "shall not survive the administration of my estate" to mean, under Missouri law, the final conclusion of the administration of the estate. The basic legal framework of the discussion in *Bookwalter v. Lamar, supra,* was the same as in *Kasper v. Kellar, supra.* Both cases concluded that the will should be interpreted in accordance with the intent of the testator, and the words used should be governed by the law of the State in which the will was being probated. In *United States v. Mappes,* 318 F.2d 508, 510 (10th Cir. 1963), the court stated that in determining whether the interest passed to the spouse was a terminable interest within the meaning of the Internal Revenue Code, it must first determine the interest which passed at the instant of the testator's death, not the interest given by the probate court. The court pointed out that the paragraph of the will which made the devise required that the spouse survive the testator and "not die before the estate 'has been administered'". The court then proceeded to construe this language under Oklahoma law. The court pointed out that in its view this language had a

different meaning from the phrase "at the time of distribution", which had been interpreted under South Dakota law to be equivalent to the time of death. The court concluded that under Oklahoma law the words "before the estate has been administered" meant the final decree of distribution of the estate. In *Pirrie v. United States,* 33 AFTR 2d 74–1360 (9th Cir. 1973), the court held that a bequest to a spouse conditioned on her survival until "a decree of distribution is entered in my estate" was ambiguous, and that the courts were split over construction of similarly worded instruments. The court stated then—

The only indication we have of local law is a decision of the Montana probate court invalidating for ambiguity a clause employing virtually identical language. (See *Steele v. United States* (D. Mont. 1956) 146 F. Supp. 316 [50 AFTR 907]. Under the standard of *Commissioner v. Estate of Bosch* (1967) 387 U.S. 456, 465 [19 AFTR 2d 1891], we may not disregard such a ruling absent "persuasive data" that the state supreme court would decide otherwise. Here we have no basis for supposing that the Montana courts would reverse the probate court and give effect to the provision in question. With the conditioning language read out of the will, the estate does qualify for the marital deduction. * * * [*Pirrie v. United States, supra* at 74–1361.]

It is clear from these cases that we are governed by the meaning of the phrase "survive distribution" as interpreted in the courts of the State of Washington.

The only case we have found by a court of the State of Washington dealing with the meaning of words similar to "survive distribution" is *Estate of Carlson v. Washington Mut. Sav. Bank,* 700 P.2d 771 (Wash. Ct. App. 1985). In that case, the Washington court of appeals held that a phrase in the will which provided that the beneficiary was to receive a share of the estate, unless she were to "die prior to distribution", was ambiguous, and that the will should be looked at in context to gather the meaning the words had in the will. The court pointed out that the phrase "die prior to distribution", or similar words, had not been construed by the Washington courts, but had been the subject of numerous reported decisions in other jurisdictions with a range of results from different courts. The court in *Estate of Carlson v. Washington Mut. Sav. Bank, supra* at 774 n.1, cited a number of cases from various States reaching different results as to the meaning of phrases similar to the one it was

construing. See also the comments and cases collected in 59 A.L.R.3d 1043 (1974). In the *Estate of Carlson* case, the court decided that, reading the will as a whole, it was the testator's intent that an amount which had actually been distributed to the beneficiary under the will was vested in her and was not divested because of her death prior to final distribution of the estate. Therefore, the portion of the estate that had actually been distributed to the beneficiary went to the heirs of that beneficiary, but the failure of the beneficiary to survive until the rest of the distributions were made had the effect of defeating her contingent interest in the latter distributions, which accordingly went to other designated beneficiaries under decedent's will. We have found no other case in Washington construing a phrase such as "die prior to distribution", or as used here "survive distribution". We conclude from the *Estate of Carlson* case that the law there announced is that "survive distribution" is not a term of art, but may be interpreted to mean that any amount which has actually been distributed to a beneficiary prior to her death under a provision that she takes if she "survives distribution" has vested absolutely in the beneficiary, but any amount that has not been distributed has not vested. We accept the *Estate of Carlson* case as the law of the State of Washington.[5]

Under section 2056(b)(1) and (3) an interest is terminable if it is not required to vest in the devisee within 6 months. The requirement of distribution is the criterion, rather than actual distribution. Therefore, we conclude that the personal property bequeathed to Mrs. Bond was a terminable interest since, under *Estate of Carlson,* Mrs. Bond's interest in such property was contingent upon her surviving until it was actually distributed to her, and clearly there was no requirement that personal property be distributed to Mrs. Bond within 6 months after decedent's death. Therefore, no part of the value of the personal property bequeathed to Mrs. Bond is includable in the marital deduction. In our view, that is the clear import of the holding of *Estate of Carlson.*

---

[5] In the *Estate of Carlson v. Washington Mut. Sav. Bank,* 700 P.2d 771 (Wash. Ct. App. 1985), the testator at the time of his death had real property in Alaska which the executor had sold with the permission of the beneficiaries. There was no issue in that case as to the time of vesting of real property.

This brings us to the more difficult question of whether the value of the real property devised to Mrs. Bond is a part of the marital deduction. Petitioner argues that since under Washington law the title to real property vested in Mrs. Bond immediately upon her husband's death, the value of this property is a part of the marital deduction.

Petitioner argues that under the provisions of Wash. Rev. Code Ann. section 11.04.250 (West 1987), title to real property vests in the heirs or devisees immediately upon the death of the decedent and therefore is required to be and is deemed to be distributed to the devisee immediately upon the decedent's death. Petitioner concludes that the words "survive distribution" do not require any waiting period for the distribution of the real property. Petitioner argues that, therefore, the value of the real property which Mrs. Bond received should be a part of the marital deduction even if the personal property is held not to be. If, as respondent contends, however, the term "survive distribution", as amplified by the statement "survive distribution of her share of the remainder of the estate", should be interpreted to mean "to survive the entry of the final decree of distribution", any devise of property real or personal made to Mrs. Bond is not vested in her under the will and, therefore, "distributed to her", until the final decree of distribution of the estate, regardless of the statutory provisions as to the vesting of real property immediately upon a decedent's death. If we interpret decedent's will as respondent contends we should, the will does not devise the real property to Mrs. Bond until the final decree of distribution of decedent's estate has been entered. However, if the words used in the will are to be interpreted to require only that Mrs. Bond survive actual distribution of any interest in the estate, since the real property vested upon decedent's death, the real property devised to Mrs. Bond is not a devise of a terminable interest. As held in *Estate of Carlson*, under Washington law the meaning of "survive distribution" depends on decedent's intent in using the words. Decedent's intent in using these words must be construed from a reading of the will as a whole, if possible. If the intent of the testator was to have the real property vest immediately upon his death in accordance with Washington law, this intent controls, and the real property

vests in and is distributable to Mrs. Bond immediately upon decedent's death.

The court in *Estate of Carlson v. Washington Mut. Sav. Bank,* 700 P.2d at 773, stated that while the phrase "die prior to distribution" is ambiguous and susceptible to many interpretations, the meaning could be ascertained from the will as a whole. The court concluded that as used in the will which was considered in the *Estate of Carlson* case, "distribution is as distribution occurs". *Estate of Carlson v. Washington Mut. Sav. Bank, supra* at 774. Under the court's holding in *Estate of Carlson,* "survive distribution" is an ambiguous term that should be interpreted as the testator intended for it to be interpreted. Because of the possible ambiguity in decedent's will, we received oral testimony which petitioner contends casts light on decedent's intent. The testimony did not actually deal with decedent's intent in the use of the words "survive distribution", but rather was to the effect that the scrivener of the will made a mistake in using the words "survive distribution", rather than "survive me". This is not helpful in determining the testator's intent. It rather asks that a mistake be corrected. Furthermore, the evidence as a whole does not show that a mistake was made. The very paragraph that contained the requirement that Mrs. Bond "survive distribution" was corrected by the scrivener. However, considering the will as a whole, we conclude that decedent intended "survive distribution" as modified by "survive distribution to her of her share of the remainder of my estate" to mean, as in *Estate of Carlson,* "distribution is as distribution occurs". *Estate of Carlson v. Washington Mut. Sav. Bank, supra.* Mr. Bond was in a business involving real estate and can be presumed to be at least somewhat knowledgeable as to laws governing real property. It is also reasonable to conclude that decedent knew that Washington law provided that no administration of the estate, or decree of administration, or other order of a court, was necessary to vest real property in a devisee. From the four corners of the will, it is apparent that decedent did not wish Mrs. Bond to be required to await distribution by a court decree, unless such a decree was required. Decedent's will appointed Mrs. Bond decedent's personal representative without bond and "with unrestricted nonintervention powers". A further provision in the will under the title "unrestricted nonintervention

powers" states that "my estate shall be settled without the intervention of any court or courts". It further states, with respect to probation of the will, that inventory of property of the estate, notice to creditors and inheritance and estate tax authorities, filing a final report or procuring a final decree of distribution shall be done as required by the existing laws of the State of Washington or as desired by the personal representative. The State of Washington does not require a decree of distribution or any similar decree to vest real property in a devisee. We, therefore, conclude from decedent's will read as a whole that decedent intended for his real property to vest in Mrs. Bond immediately upon his death, and that under the laws of the State of Washington this vesting is a distribution of the real property within the meaning of "survive distribution" as used in decedent's will. We conclude that decedent's intent was that the real property devised to Mrs. Bond vest absolutely in her immediately upon his death.

In the case of *In re Estate of Schmidt,* 236 P. 274 (Wash. 1925), the court specifically considered the meaning of the provisions of Washington law with respect to the vesting of real property in an heir or devisee.[6] In that case Mr. Schmidt died leaving a wife and no children, but leaving brothers and sisters. In his will he devised all of his property to his wife. His wife died before probate of his will. His heirs at law, his brothers and sisters, claimed that the real property of Mr. Schmidt should go to them and not to the heirs of Mr.

---

[6] At this juncture we quote the Washington statute in full because of the argument made by respondent. Wash. Rev. Code Ann. sec. 11.04.250 (West 1987) provides—

When a person dies seized of lands, tenements, or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: *Provided,* That no person shall be deemed a devisee until the will has been probated. The title and right to possession of such lands, tenements, or hereditaments so vested in such heirs or devisees, together with the rents, issues and profits thereof shall be good and valid against all persons claiming adversely to the claims of any such heirs, or devisees, excepting only the personal representative when appointed, and persons lawfully claiming under such personal representative; and any one or more of such heirs or devisees, or their grantees, jointly or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments, issues and profits thereof, whether letters testamentary or of administration be granted or not, from any person except the personal representative and those lawfully claiming under such personal representative.

Schmidt's widow, since Mrs. Schmidt was not vested with the real property under Wash. Rev. Code Ann. section 11.04.250 (West 1987) because she was not deemed a devisee until the will had been probated. The Washington Supreme Court held that the property was the property of Mrs. Schmidt and went to her heirs. The court pointed out the following—

> The argument on behalf of the appellants is that the devise did not vest at the death of the testator contingently upon the probate of the will, but that the devise was contingent upon her being alive when the will was probated. The argument is based on the proviso with which the second sentence of the statute ends. To adopt that interpretation inevitably leads to a rewriting of the section so that it will read that when a person dies seized of lands, tenements, or hereditaments, or any right to, or entitled to any interest therein in fee or for the life of another his title thereto shall vest in his devisees at the time of probating his will, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. That would be a complete nullification of the twice repeated declaration in the most emphatic language of the statute that upon death the title vests immediately. We are not authorized under the guise of interpretation to thus rewrite the statute. Its different parts must be understood as containing no inconsistencies. Indeed, there are none in it. Prior to the proviso the statute says that upon death the title shall vest "immediately," "instantly." This is the substantive portion of the law, intended, manifestly, to change the rule announced in some of our earlier cases such as *Balch v. Smith,* 4 Wash. 497, 30 P. 648. [*In re Estate of Schmidt,* 236 P. at 275.]

The court went on to say that the word "deemed" is used in the sense of adjudged or decided, and that the provision is for a confirmation by probate of the will of the vesting of the title, which confirmation is proof of the vesting. Whether the will has been probated does not affect whether in fact the title was vested. The fact that the will has not been probated merely means that this final proof is not present until the probate, and other proof might be necessary.

This interpretation of the statute is in accordance with prior holdings of the Supreme Court of Washington that title to real property vests immediately in the heirs or devisee upon the death of the person from whom they inherit. *Murphy v. Murphy,* 84 P. 646 (Wash. 1906).

The case most comparable to the instant case is *Estate of Horton v. Commissioner,* 47 T.C. 641 (1967), revd. 388 F.2d 51 (2d Cir. 1967). In *Estate of Horton* we were considering whether the value of real property was part of a marital

deduction under language in a New York will that stated: "'Should * * * [my wife] die before said residuary estate shall have been distributed to her * * * I give, devise and bequeath said residuary estate * * * to our two sons'". *Estate of Horton v. Commissioner, supra* at 642. The parties agreed that under this provision of the will any personal property would not be part of the marital deduction because distribution of the personal property in New York was not required to be made within 6 months. The taxpayer, however, took the position that the value of the real property was part of the marital deduction since it passed immediately to the wife under New York law. In our *Estate of Horton* opinion we recognized that the nature of the interest that passed to the wife under her husband's will was a question of State law. After discussing the New York law, including *In re Estate of Herrmann,* 82 N.Y.S.2d 888 (Sur. Ct. 1948), we rejected the taxpayer's contention that the testator, by conditioning the bequest to his wife upon her survival to the date of distribution, had in mind the distinctions in New York law between the devolution of real and personal property. We, therefore, rejected the taxpayer's contention that all that was required for the real property to vest absolutely in the testator's wife was that she be living at his death. We stated in *Estate of Horton v. Commissioner, supra* at 645—

We do not think that a New York court would place such a construction upon the will. The language of the will in the *Herrmann* case, "entitled to the possession of or title to any funds or property hereunder," was more explicit in distinguishing between real and personal property. The court there was able to read the will as conditioning the gift upon survival to the time of becoming "entitled to * * * the title to * * * property," which does seem to evidence a reasonably clear intent to make a gift of real property conditional merely upon surviving the death of the testator since title to such property vests automatically in the devisee at that time. * * *

The Court of Appeals for the Second Circuit accepted the view of this Court that the law of New York controlled whether the interest in the real property which passed to the decedent's wife was a terminable interest, but after a discussion of the New York law, concluded that under the provision in the will which was there being construed, the real property did immediately vest absolutely subject only to indebtedness of the estate. In reversing this Court, the Court of

Appeals for the Second Circuit stated in *Estate of Horton v. Commissioner,* 388 F.2d at 53—

While the Tax Court distinguished the [*Herrmann*] decision on the basis of the * * * [language of the will in that case, which used the terms "possessing of" and "title to" in reference to the testator's property] this shows only that *Herrmann* was a somewhat easier case for holding that decease of the devisee prior to distribution would not effect a defeasance— not that the New York courts would reach a different result as to Mr. Horton's will. It is as true here as in *Herrmann* that as to the personalty "there would be distribution only when the executors had acted to distribute the property," whereas in the case of the realty "there would be distribution immediately" and consequently nothing on which paragraph Fourth can operate. * * *

The Court of Appeals for the Second Circuit then cited a number of New York cases which, in its view, supported the result as to the New York law. Subsequently, in *Estate of Tilyou v. Commissioner,* 56 T.C. 1362 (1971), revd. 470 F.2d 693 (2d Cir. 1972), the question arose only as to whether the personal property which passed under a clause of a will which terminated the wife's interest if she died "*'before she shall have become entitled to any part or share of my residuary estate'*" was a terminable interest. We pointed out that the parties agreed that the real property left to the wife vested immediately upon her husband's death under the decision of the Court of Appeals for the Second Circuit in *Estate of Horton v. Commissioner, supra.* We concluded that the personal property was a terminable interest, which holding was reversed by the Court of Appeals for the Second Circuit based upon that court's interpretation of New York law. *Estate of Tilyou v. Commissioner,* 470 F.2d 693 (2d Cir. 1972). The Court of Appeals for the Second Circuit stated that the law of New York was not clear as to the meaning of the phrase "before she shall have become entitled to any part or share of my residuary estate", and, because of the unclear New York law, and in light of other considerations, concluded that these words did not create a terminable interest comparable to that created in the case of *Estate of Fried v. Commissioner,* 54 T.C. 805 (1970), affd. 445 F.2d 979 (2d Cir. 1971), and similar cases involving "survive probate" or "survive distribution" clauses used in other New York wills. However, both in our holding in *Estate of Tilyou v. Commissioner, supra,* and the Court of Appeals' holding, the

distinction between the vesting of real and personal property was recognized.

Neither party in the opening or reply briefs cited or discussed *Estate of Horton v. Commissioner, supra,* or any of the other cases dealing with distinctions in the time of vesting or of distribution of real and personal property. Because we had found only one Washington case specifically dealing with the meaning of "survive distribution", *Estate of Carlson v. Washington Mut. Sav. Bank,* 700 P.2d 771 (Wash. Ct. App. 1985), and that case was not a case of the Supreme Court of Washington, we asked the parties for further briefs, and specifically asked for citations for Washington cases dealing with the vesting of real property upon the death of a person whose will requires the devisee to "survive distribution" or "to survive distribution to her of her share of the residuary estate". Neither party discussed or cited any Washington cases, but primarily repeated arguments made in the original briefs.

Respondent argued that even if the property vested in Mrs. Bond immediately upon her husband's death, it was subject to divestiture. However, the provisions of Wash. Rev. Code Ann. section 11.04.250 (West 1987) make it clear that the property vests subject only to payment of estate debts. It is clear that the property is vested subject only to debts, family allowances, and costs of administration. As we read this provision it puts no burden on real property that would not be upon such property in any circumstance. If all personal property in an estate is disposed of in payment of debts and there are still outstanding debts, the real property is subject to payment of these debts. This is comparable to the devise of property subject to a mortgage. The statute specifically provides that no administration of the estate or decree of distribution is necessary to vest title to real property in a devisee. Unless "survive distribution" is interpreted as "survive a final decree of distribution of the estate", the real property vested in Mrs. Bond immediately upon decedent's death, and administration of the estate was not required for the property to vest. To accept respondent's position that the value of any property subject to payment of debts of an estate is a terminable interest which is not a part of the marital deduction would be a holding that the value of no property in an estate is a part of the marital deduction, since generally all

property of an estate vests subject to payment of estate debts.

Both this Court and a number of Courts of Appeals have held that the question of whether the value of real property is a part of the marital deduction depends on the proper interpretation of "survive distribution" or similar phrases under State law. The one Washington case we have found, *Estate of Carlson v. Washington Mut. Sav. Bank, supra,* holds that the words "survive distribution" or "survive distribution to her" under Washington law mean actual distribution if the context of the will so indicates. Since real property vests in the devisee upon the death of the testator, it is actually by law required to be distributed to the devisee upon the testator's death. The Court of Appeals for the Ninth Circuit in *Pirrie v. United States,* 33 AFTR .2d 74–1360 (9th Cir. 1973), accepted Montana law as interpreted by a lower court when there was no decision by the highest court of the State.

Based on the facts here involved and the law of the State of Washington as stated in *Estate of Carlson v. Washington Mut. Sav. Bank, supra,* we conclude that the personal property which passed from decedent to Mrs. Bond under the provisions of the will requiring that she survive distribution or survive distribution to her of her share of the residual estate is the bequest of a terminable interest, the value of which is not properly a part of the marital deduction under section 2056(b). However, we conclude that under Washington law the real property was required to vest in Mrs. Bond immediately upon decedent's death.

We conclude that decedent intended the words "survive distribution" to mean what they would mean under Washington law. Under Washington law the real property devised to Mrs. Bond would be part of her estate if she survived decedent but died prior to the final decree of distribution of decedent's estate, and such property would go to her heirs or devisees. Under section 2056(b)(1), for an interest to be terminable, the will under which the interest passes must provide that a person other than the surviving spouse (or the estate of such spouse) will enjoy the property if the contingency occurs. If, however, the property is part of the estate of the devisee-spouse and passes to her heirs or devisees, it is not a terminable interest. We, therefore, conclude that the

value of the real property devised to Mrs. Bond is a part of the marital deduction, since the interest which Mrs. Bond received judged by Washington law was not a terminable interest.[7]

In view of our conclusion on the merits, petitioner's motion for summary judgment is denied.

*An appropriate order will be issued and decision will be entered under Rule 155.*

---

[7] It is interesting to note that many, if not most, of the cases in which we have held that property bequeathed to a spouse, if the spouse "survives distribution", is a terminable interest are cases governed by California law. Uniformly the California courts have held "survive distribution" to mean survive a final decree of distribution. See *Estate of Harmon v. Commissioner,* 84 T.C. 329, 336 (1985), and cases there cited. It is further interesting to note that one of the few cases which has come to our attention specifically dealing with real property is *Estate of Harmon,* a case in which the property interest was determined under the law of California.